Donald Gibson, a Minor, by Norman Gibson, His Father and Next Friend, Plaintiff-Appellee, v. Healy Brothers and Company, a Corporation, Defendant, and Metropolitan Sanitary District of Greater Chicago, a Municipal Corporation, and Thomas B. Healy and Michael S. Healy, Doing Business Under the Firm Name and Style of Healy Brothers and Company, McCook, Illinois, Defendants-Appellants.

Gen. No. 51,729.

First District, Fourth Division.

April 16, 1969.

Rehearing denied May 19, 1969.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Walter W. Ross, Jr., Herbert C. Loth, Jr., Robert G. Schloerb, and Gene A. Knorr, of counsel), for appellants.

Roland C. Upton, George F. Witteman, and Harvey A. Cohan, of Chicago (Samuel Levin, of counsel), for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

Donald Gibson, a minor, by Norman Gibson, his father and next friend, sued the defendants, Healy Brothers and Company, a corporation, the Metropolitan Sanitary District of Greater Chicago, a Municipal Corporation and Thomas B. Healy and Michael S. Healy, doing business under the firm name and style of Healy Brothers and Company, to recover damages for personal injuries. Healy Brothers and Company, a corporation, was dismissed as a party defendant. The jury rendered a verdict in favor of plaintiff and awarded damages in the sum of $250,000 against all the remaining defendants. On appeal they contend: (a) The trial court erred in denying defendants' motions for directed verdict and judgment notwithstanding the verdict since there was no evidence that defendant violated any duty owed plaintiff or that defendants proximately caused plaintiff's injury; and further that plaintiff was contributorily negligent as a matter of law; (b) The trial court erred in denying defendants' motion for a new trial because the trial court erred in instructing the jury; plaintiff's expert witness was not competent; hypothetical questions were based on facts not in evidence; and the verdict was excessive.

The following evidence was adduced at the trial by plaintiff. Healy Brothers and the Sanitary District contracted for the construction of an intercepting sewer tunnel. A portion of the work necessitated the construction of a manhole being brought up from the tunnel to the street level at a site on Ballard Road just east of Maryland Street in Maine Township, an unincorporated area in Cook County, Illinois.

Ballard Road was an asphalt road two lanes wide and ran generally east and west. It was about thirty feet wide and had dirt shoulders. There were no sidewalks or streetlights in the area.

346

The manhole identified as Shaft No. 18 was located at the north shoulder of Ballard Road and was about seventy-eight feet deep. The shaft was dug out by air spades and hand laborers. Dirt and debris from the excavation were placed in muck boxes and a crane was used to lift the boxes from the shaft. The dirt and debris were then loaded into trucks and hauled away.

Immediately west of the shaft was a large mound of dirt and various equipment. Lighted flare pots were placed around the equipment, excavation and pile of dirt. The flare pots were placed in about the center of Ballard Road on the south side of the excavation, equipment and pile of dirt. They were burning at the time of the accident. A large sign was erected east of the excavation site, that read "DANGER" in large letters.

The fire or flare pots were the usual type and used No. 2 fuel oil which is drawn up a wick where it would vaporize and thus allow burning. The flame would be within less than a two-inch diameter around the four openings in the top of the flare pot. These pots were weighted on the bottom so that they would not tip over unless tipped beyond 60 degrees.

The work on the sewer construction had been in progress since the early part of 1958 and this accident occurred near the site of Shaft No. 18 on the evening of January 15, 1959. The evidence revealed that between January 1st and 15th, 1959, the surface of Ballard Road was muddy and sloppy to a depth of about ⅜ of an inch and during freezing weather the surface of Ballard Road would become rough and uneven.

On the day of the occurrence, plaintiff was fifteen years of age, five foot, eight or nine, and weighed 150 pounds, and was well aware of the excavation site area, having played around it on numerous occasions with his brother. There was snow on the ground and the average temperature was eighteen degrees with a wind velocity of 24.2 mph and gusts up to 32 mph. While going to

347

school that day, plaintiff observed the construction site was rather rough, that there was a lot of dirt on the road and that the flare pots were placed in position.

Prior to the accident, plaintiff was walking west on the south side of Ballard Road alone and had in his possession a flashlight which he did not use. It was between the hours of 6 and 7 p. m. and he was out to see the condition of the ice pond that was located near the construction site off Ballard Road. There was deep snow and ice on the far south side of the road caused by plowing of snow on Ballard Road. He crossed over to the north side of Ballard Road, continued to proceed west toward the danger sign and the excavation area. As he approached the danger sign, he noticed the road was rough with mounds of dirt and was slippery so he crossed to the middle of Ballard Road. Plaintiff observed that dirt and debris extended from the equipment out into the highway where trucks had worn it smooth.

He passed within one foot to eight inches of the first flare pot. These flare pots were set out in the center of Ballard Road. When he walked another 15 or 20 feet he came abreast of another flare pot and he was six inches away from it when he slipped on the dirt and debris, and fell sideways ending up with the flare pot between his legs. The flare pot was overturned on his clothing when he tried to scramble away from it. Plaintiff observed his lower pant legs were on fire. He tried to beat out the flames with his bare hands and finally ran to the nearby field and rolled in small ice ponds to extinguish the flames. He could not remember too much about walking home, but recalls that his coat was still smouldering and he again had to beat the flames with his bare hands.

Evidence was also introduced as to plaintiff's injuries and damages. The defendants chose not to intro-

348

duce any evidence and they rested their case at the close of plaintiff's case.

Defendants' first contention is that the trial court erred in denying defendants' motions for a directed verdict and judgment notwithstanding the verdict since there was no evidence that defendant violated any duty owed plaintiff or that defendants proximately caused plaintiff's injury; and further that plaintiff was contributorily negligent as a matter of law.

■■■■■ This contention must be reviewed in the context of Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967) at page 510:

> "In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

See also Bernier v. Skripek, 86 Ill App2d 118, 126–127, 229 NE2d 890 (1967).

Defendants argue that they were not negligent in causing dirt and clay to accumulate on Ballard Road to form an uneven, rippling surface; since construction was still in progress a certain amount of dirt near the excavation was to be expected, but even if they were negligent the defect present at the scene was trivial. Further, that it was not foreseeable that plaintiff would walk where he did, nor was it foreseeable that the rippled condition caused by the mud, snow and ice would result in plaintiff's injuries. Defendants contend there was neither evidence of negligence on their part in the performance of the work at the construction site nor evidence of any act committed on their part that was the proximate cause of plaintiff's injuries. Defendants allege they had a duty to exercise only ordinary care in

349

the maintenance of the construction site and that the duty to keep the road free from mud six inches outside the line of flare pots adjacent to the excavation would be extending their duty beyond reasonable limits.

The evidence disclosed that Ballard Road, at the scene of the construction site, was covered with mud, dirt, clay and debris, in some places three to four inches in height, making the road dangerously rough and slippery and motor vehicles zigzagged to avoid large lumps of clay on the road. In Arvidson v. City of Elmhurst, 11 Ill2d 601, 145 NE2d 105 (1957) the court said at page 605:

> "The rule in Illinois, reiterated in the case law, is that a jury question on the issue of the city's negligence is presented only when the defect in the sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it." (Cases cited.)

The lane open to the public was described by witnesses as being littered with mud, clay and dirt and that this condition had existed for a matter of months. The record establishes a condition of the road that cannot be dismissed as a "trivial defect."

The evidence viewed most favorably to the plaintiff reveals that there was no public sidewalk on Ballard Road, that Ballard Road was used for pedestrian travel, that there was a public school nearby, that there were large lumps of clay, mud and debris on Ballard Road, that the south shoulder of Ballard Road was covered with snow and ice and was impassable to pedestrian travel and that the large lumps of clay, mud and debris were caused by the work on the construction site. In view of all the evidence presented and the inferences which may be drawn therefrom we cannot say, applying Pedrick, that the evidence so overwhelmingly favors movant that no contrary verdict could stand.

■ Defendants also contend that plaintiff was contributorily negligent as a matter of law. This contention must also be viewed in the light of the Pedrick decision. Defendants charge that plaintiff had knowledge that construction had been in progress for many months; that he had passed the site many times on his way to and from school and had seen and walked upon the rough construction site and dirt; that the site was furnished with a large danger sign and appropriately placed flare pots. Defendants argue that plaintiff was guilty of contributory negligence because he should have walked on the other side of the open lane; stayed away from the flare pots; used his flashlight; and because he failed to exercise the care that one of his age, experience, intelligence and capacity might be expected to exercise under similar circumstances.

Again viewing all the evidence most favorably to the plaintiff we cannot say that plaintiff was guilty of contributory negligence as a matter of law. The testimony of plaintiff reveals that he was walking carefully, that he was looking straight ahead, and that he fell as a result of the ice, mounds of dirt and debris at the construction site.

Defendants cite Klimovich v. Crutcher, 57 Ill App2d 244, 206 NE2d 723 (1965) which was decided before Pedrick and is therefore not applicable as a standard here.

Under the Pedrick rule we cannot say that the plaintiff was guilty of contributory negligence as a matter of law.

We feel therefore that the court did not err in denying defendants' motions for directed verdicts and judgment notwithstanding the verdict.

Defendants' second point raises various alleged trial errors as grounds for a new trial.

Plaintiff called Edward C. McLean, an industrial engineer, who testified to his experience in handling flare pots, which consisted of filling thirty-five flare pots for eighty days some years before as a young engineer on highway work. The following hypothetical question was propounded to McLean:

> ". . .
>
> "Assume further that this young man slips on the rippled dirt covered with snow and ice and falls, with his legs becoming entangled with the flare pots of a Pressed Toledo or Anthes type;
>
> "That the boy's clothing immediately at the trouser level becomes ignited and burns, and that the flames then spread up the trousers and jacket;
>
> "Do you have an opinion, based upon a reasonable degree of engineering certainty as to the cause if there is a causal connection between the flare pots and the ignition of the clothing of the boy's trousers?"

Over objections, McLean answered, in his opinion, that denim, coming in contact with the lighted flare pot, would burn.

McLean was then asked:

> "And if the flare pot were held in an upside down position with the oil flowing from it, would there be any causal connection, based upon a reasonable degree of engineering certainty, as to the cause of ignition with the oil flowing from the pot, assuming the other prior facts?"

Defendants lodged appropriate objections, but the witness was permitted to answer ". . . the cause of ignition would be the lighted flare pot . . . igniting the oil and vapor in the oil of the spilled or capsized flare pot."

■ ■ We hold that McLean was not competent to express an opinion that the denim clothing would burn in

coming in contact with the lighted flare pot. Mc-Lean's qualifications as an expert encompassed flare pots, their design, construction, use, operation and function. The test of the competency of an expert witness is whether he discloses sufficient knowledge of his subject matter to entitle his opinion to go the the jury. Piacentini v. Bonnefil, 69 Ill App2d 433, 217 NE2d 507 (1966). On cross-examination McLean admitted he was not an expert regarding the combustibility or burning qualities of fabrics or other materials.

█ The second question is also objectionable, because there was no evidence introduced that the flare pot was in an "upside down" position with "oil flowing" from it.

Defendants also contend that the court erred in permitting McLean to testify as an expert in answer to hypothetical questions before any of the facts stated in the hypothetical questions were adduced in evidence. Defendants argue that this procedure deprived them of any meaningful cross-examination.

Plaintiff's counsel informed the court that McLean's presence was urgently needed in another state, that McLean was not sure when he would be back in this state and that plaintiff's counsel would adduce the lacking evidence from subsequent witnesses. The court with reluctance, over defendants' objection, permitted McLean to testify prior to the introduction of the facts referred to in the hypothetical questions.

█ Permitting an expert witness to answer hypothetical questions based upon facts which have not been previously adduced in evidence upon the guarantee that such facts will subsequently be adduced in evidence is not desirable and is strongly to be discouraged. Whether or not such practice will be permitted in the particular situation is within the sound discretion of the court. Pittsburgh, Ft. W. & C. R. Co. v. Moore, 110

Ill App 304 (1903). A review of the cross-examination of McLean does not reflect that defendants were prejudiced in this case. We hold that the court did not abuse its discretion in this regard, but assume that the calling of this witness out of proper order would not be permitted to happen again on retrial.

We do find that the trial court erred in giving the following two instructions.

Plaintiff's Instruction 23 read as follows:

> "There was in force in the State of Illinois at the time of the occurrence in question, a certain statute which provided that:
>
>> " 'It is unlawful for any person to deposit spoil or cause spoil from any excavation to be deposited in such a manner that the tow (SIC) of such spoil will be nearer than (SIC) twenty feet to any established right of way or any public highway located outside of the corporate limits of municipality.'
>
> "If you decide that the parties violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the parties were negligent before and at the time of the occurrence."

 This instruction is a substantive portion of Ill Rev Stats, c 121, § 9–115 (1959). A reading of the entire statute reveals that it is only applicable to persons working adjacent to the established right-of-way of any public highway. The work that was being performed here was not adjacent to the established right-of-way of a public highway but rather was being performed on a part of the established right-of-way.

 Plaintiff's Instruction 22 was as follows:

354

"There was in force in the State of Illinois at the time of the occurrence in question, a certain statute which provided that:

" 'No vehicle shall be driven or moved on any highway unless such vehicle is so constructed or loaded as to prevent any of its load from depositing, sifting, leaking or otherwise escaping therefrom except that sand may be deposited for the purpose of securing traction or water or other substance may be spread on a roadway in cleaning or maintaining such roadway.

" 'No person shall operate on any highway any vehicle with any load unless said load and any covering thereon is securely fastened so as to prevent said covering or load from becoming loose, detached, or in any manner a hazard to other users of the highway.'

"If you decide that the parties violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the parties were negligent before and at the time of the occurrence."

The above instruction, taken from Ill Rev Stats, c 95½, § 226 (1959) is not supported by evidence that vehicles driven or moved on the highway were constructed or loaded in violation of the statute or that any load was not securely fastened, became loose or detached.

Since we are remanding this case for a new trial, we feel it necessary to discuss the following instructions.

 The trial court did not err in the giving of plaintiff's instruction regarding the failure of defendants to produce evidence. IPI, 5.01. When plaintiff makes

a prima facie case, the failure of a defendant to produce evidence (e. g., condition of Ballard Road) warrants the inference that the testimony would be unfavorable to him and this failure to produce evidence may be considered by the jury. Beery v. Breed, 311 Ill App 469, 36 NE2d 591 (1941).

The trial court did not err in refusing Defendant's Instruction 18, which recites, Ill Rev Stats, c 95½, § 175 (1957), relating to the duty of pedestrians to keep on the left of the paved portion of a highway, the left shoulder of the road in this case, and upon meeting a vehicle to step off to the left. This statute pertains only to the relationship of pedestrians and vehicles.

Because we reverse and remand for a new trial, we do not pass upon the question of the amount of the verdict.

Reversed and remanded.

DRUCKER, P. J. and ENGLISH, J., concur.