LEWIS E. BLOOMGREN, Indiv. and as Appointee of Lynn Reckman Bloomgren, Plaintiff-Appellee, v. FIRE INSURANCE EXCHANGE (improperly sued as FARMERS INSURANCE GROUP), d/b/a Illinois Farmers Insurance Company, Defendant-Appellant.

Third District No. 3—86—0738

Opinion filed October 13, 1987.—Modified opinion filed December 22, 1987.—Rehearing denied December 24, 1987.

Satter, Ewing & Beyer, of Pontiac (Douglas W. Richard, of counsel), for appellant.

Bell & Pepmeyer, of Galesburg (Charles Bell, of counsel), for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Plaintiffs, Lewis E. Bloomgren and Lynn Reckman Bloomgren, brought an action on an insurance policy against the defendant, Fire Insurance Exchange. Plaintiffs sought to recover damages for real

and personal property destroyed in a fire at Lewis E. Bloomgren's home on May 1, 1983. The trial court granted defendant's motion for a directed verdict with regard to third party Lynn Reckman Bloomgren (hereafter Lynn), finding that she had no direct rights against the insurer. After a bench trial, judgment was entered in favor of plaintiff Lewis E. Bloomgren for $98,561.52 plus costs, with a credit of $40,752.87 upon release of a mortgage assigned to defendant as a result of the payment to the mortgagee under the mortgage clause of the policy of insurance. Defendant appeals.

This case arose out of a fire which destroyed plaintiff's home in Warren County, Illinois. Plaintiff occupied the house along with his fiancee, Lynn. The value of the property destroyed in the fire had been stipulated to and is not in dispute. This action was brought following the insurer's refusal to make payment under its policy.

On the day of the fire, Lynn left the house with her daughter at about 8:40 a.m. to visit her grandmother in Clinton, Iowa. The plaintiff left the house at approximately 9:10 a.m. When he left, the doors and windows were locked. Plaintiff testified that he left the house because he wanted to catch up with Lynn because he needed some money. He stated that he went to Lynn's mother's house, but they had already left. After running several errands in Galesburg, he returned home and discovered that his house was on fire.

Several neighbors testified with regard to their observations of the fire. Diana Johnson, who lived with her husband across the road from the Bloomgren house, noticed sparks coming from the north light on the attached garage sometime between 9:20 a.m. and 9:45 a.m. but she did not notice any smoke at that time. Later, sometime between 9:40 and 9:45, she saw black smoke coming out of the chimney on the south side of the house. She called the fire department at 10:10 a.m.

Claris Eugene Johnson testified that at approximately 10 a.m. he looked at the Bloomgren house and saw a lot of dark grey smoke coming from the fireplace. As he walked into the plaintiff's driveway, he saw sparks coming from the north garage light and he also saw flames coming from that light. He saw white smoke coming out of the shingles on the roof of the garage. He did not notice any odor of burning gasoline.

Another neighbor, Harry Brown, testified that after he had finished his chores, at about 9 a.m., he walked by plaintiff's house. At about 9:20 a.m. his wife called him about smoke coming from the plaintiff's roof and sparks jumping from the light on the garage. He stated that he saw black smoke coming out of the chimney sometime

before 9:30 a.m. and sparks shooting to the ground from the south light on the garage.

When the fire department arrived there were no signs of forced entry. Richard Baily, a volunteer fireman and assistant fire chief who answered the fire call at plaintiff's residence, testified that he saw smoke coming out of the roof of the garage. He did not smell gasoline and he did not find any gasoline containers in the immediate vicinity of the house. He had previously seen gasoline burning but did not see any characteristics of a gasoline fire at plaintiff's house.

Leland Pendergrass, a volunteer fireman who had the duty of making out all reports of fires for the Alexis Fire Protection District, testified that he prepared an official report on the fire which destroyed plaintiff's home. The report was prepared in compliance with the statutory duty imposed on the Alexis Fire Protection District by the statute relating to the investigation and prevention of fires. (Ill. Rev. Stat. 1985, ch. 127½, par. 6.) In the report Pendergrass stated that in his opinion the fire was caused by an electrical ignition factor. At trial, the fire incident report was admitted into evidence over the objection of the defendant.

On May 3, 1983, the insurer's expert witness, Charles Hoffman, examined the fire scene in an attempt to determine the cause and origin of the fire. Charles Hoffman is a licensed private investigator and career fire service officer for the Springfield fire department. He is also a certified arson investigator and a certified fire investigator. It was his opinion that the fire was intentionally set with the use of a flammable substance. He took a carpet sample from a protected area in the master bedroom and determined that it contained the remnant portions of gasoline. None of the wiring circuitry he examined displayed any indication of shorting or electrical malfunction.

The electrical distribution center was found in the basement. The metal box was intact and there were no burn holes or blow holes in the box. The wiring of the branch circuits that went to the individual breakers was intact and he was unable to find any area where shorting had occurred. He examined the wiring on the outside of the garage where there had been some lights and found no sign of internal heating or shorting.

In rendering his opinion, Charles Hoffman explained that sparks coming from light fixtures can occur randomly when a structure is on fire and the interior wiring is being attacked. He stated that sparks flying out of a light during a fire is normal. He also explained that although some carpeting and furniture will cause black smoke when burned, he would not expect carpeting to be burning in the early

stages of a fire, unless there was a flammable or combustible substance on the carpet to make it burn. He also stated that the carpet was sharply burned because something was burning on the surface of it.

Robert Boese was the chemist who analyzed the carpet sample from the master bedroom. It was his opinion that the carpet sample contained the remnant portion of gasoline and that gasoline was present in fairly large concentration. Based on a chromatogram test, it was his opinion that there was relatively fresh gasoline on the carpet before the fire and that it had not been there for a period of nine months. A chromatograph is a chart with peaks and valleys indicating the chemical composition of a substance.

Plaintiff testified that after he evicted a tenant from the house in the late summer of 1982, the house was a mess, and it was necessary to remove a stain near the bed. He attempted to remove the spot with a stain cleaner and the help of two friends. Mark John testified that he participated in the cleaning operation in July of 1982, and that about a pint of spot remover was used.

After the fire, plaintiff submitted to an examination under oath by the insurer on July 14, 1983, which was denied admission into evidence by the trial court. During this examination plaintiff was asked about income besides that reflected in his 1040 forms. Plaintiff failed to inform the insurance representative about his income from the illegal sale of drugs in 1981, 1982 and 1983. Plaintiff claimed that he was not asked whether he had income from the sale of drugs and that he did not volunteer such information. Plaintiff testified that he had no reason to believe that he was required to disclose his illegal drug income. Plaintiff also stipulated that he failed to reveal a $13,000 mortgage debt, with payments of $159 per month, which he had on rental property in Galesburg, Illinois. Based on the examination, the insurer raised the affirmative defense of concealment and misrepresentation at trial.

■■ ■ Defendant first argues that the trial court erred in admitting into evidence and relying upon in its decision the fire incident report prepared by Leland Pendergrass. Defendant argues that the fire incident report should not have been admitted into evidence because it contained an opinion and therefore was not admissible under the public records exception to the hearsay rule.

Generally, official records kept by public officials are admissible as an exception to the hearsay rule if required by statute or authorized to be maintained by the nature of the office. (*Oak Lawn Trust & Savings Bank v. City of Palos Heights* (1983), 115 Ill. App. 3d 887, 450

N.E.2d 788.) However, records which concern causes and effects, involving the exercise of judgment and discretion, expressions of opinion, or the drawing of conclusions are generally not admissible under the public records exception unless they concern matters to which the official would be qualified to testify about at trial. *Lombard Park District v. Chicago Title & Trust Co.* (1969), 105 Ill. App. 2d 371, 378-79, 245 N.E.2d 298, 301-02.

The fire incident report contains the opinion that the "ignition factor" of the fire was "electrical" and that the equipment involved in ignition was "fixed wiring." We find that this report clearly contains an opinion as to the cause of the fire and, as such, was not admissible under the public records exception to the hearsay rule unless the author of the report, Leland Pendergrass, was qualified as an expert to give such an opinion.

Expert testimony is proper when the subject matter of the inquiry is of such a character that only persons of skill or experience in that area are capable of forming a judgment. (*Wilson v. Chicago Transit Authority* (1983), 118 Ill. App. 3d 714, 455 N.E.2d 195.) The test of the competency of an expert witness is whether he discloses sufficient knowledge of his subject matter to entitle his opinion to go to the jury. (*Gibson v. Healy Brothers & Co.* (1969), 109 Ill. App. 2d 342, 353, 248 N.E.2d 771.) The burden of establishing the qualifications of an expert witness rests on the proponent of his testimony and the standard of review is whether the trial court has abused its discretion in permitting a particular "expert" to testify. *People v. Free* (1983), 94 Ill. 2d 378, 410, 447 N.E.2d 218.

At trial, the plaintiff did not qualify Leland Pendergrass as an expert witness before he testified. During cross-examination, Pendergrass admitted that he did not have any training in the investigation of fires or their causes and origins. In addition, it was revealed that Leland Pendergrass never conducted a cause and origin investigation of the fire and no one to his knowledge at the Alexis Fire Department had conducted a cause and origin investigation.

We find that the fire incident report was erroneously admitted into evidence because it contained an opinion as to the cause of the fire. The report was not admissible as an exception to the hearsay rule because Leland Pendergrass was not a qualified expert who was capable of giving an opinion as to the origin of the fire. Even if he was qualified as an expert, there would still be no factual basis for his opinion as to the cause of the fire because he admitted that he never conducted a formal investigation into the cause and origin of the fire.

Error in admitting evidence requires reversal if it is shown

that the admission of the incompetent evidence was prejudicial or materially affected the outcome of the trial. (*Gibson v. State Farm Mutual Automobile Insurance Co.* (1984), 125 Ill. App. 3d 142, 465 N.E.2d 689.) A review of the trial judge's opinion reveals that he relied on the fire incident report in finding that the fire was not of an incendiary origin. The trial court stated that the fire incident report corroborated the testimony of Claris Eugene Johnson. Without the fire incident report, however, there was no other expert testimony to contradict the testimony of Charles Hoffman that the fire was intentionally set.

■ Given the substantial amount of evidence in the record indicating that the fire was of an incendiary nature, we find that the trial court abused its discretion and committed reversible error in admitting the fire incident report into evidence and in relying upon it in reaching its decision. Due to our disposition of this issue, we need only address the remaining issues that will be relevant on remand.

Defendant argues that the trial court erred in ruling that plaintiff did not willfully conceal, in violation of a provision in the insurance policy, his income from the illegal sale of drugs and the $13,000 mortgage debt on rental property he owned. Defendant contends that plaintiff failed to disclose these items during the examination under oath on July 14, 1983, even though he was asked about all his expenses, bank accounts and assets in addition to being questioned about his income. Defendant claims that these misrepresentations are material because they constitute circumstantial evidence of a financial motive to commit arson. The defendant also argues that the the trial court erred in ruling that in order for the $13,000 mortgage to be material it had to be related to the property destroyed.

■ In order to void an insurance policy, a misrepresentation or concealment of material facts by the insured must be willful and with the intent to deceive and defraud the insurer. (*Weininger v. Metropolitan Fire Insurance Co.* (1935), 359 Ill. 584.) The fraud must be established by a preponderance of the evidence. *Sundquist v. Hardware Mutual Fire Insurance Co.* (1939), 371 Ill. 360, 21 N.E.2d 297.

The plaintiff testified at trial that when he was asked whether he owed any other loans to financial institutions, it was his understanding that the question referred only to loans on his insured residence. With regard to his failure to disclose his illegal drug income, plaintiff testified that he had no reason to believe that he was required to disclose illegal income. Plaintiff stated that he did not regard the proceeds from the sale of drugs as income and he did not regard it as a material fact or circumstance relating to the insurance coverage on

his house. In addition, plaintiff was not asked at the examination under oath whether he had any income from the sale of drugs.

 We believe that the failure to disclose the $13,000 mortgage deed on rental property, other than that insured hereunder, was material to the question of defendant's assets and liabilities at the time of the loss. Clearly, if the representations were intentionally made in order to conceal the facts, such concealment constitutes circumstantial evidence of a financial motive to commit arson. However, in the instant case there was not sufficient evidence to demonstrate willful concealment or fraudulent misrepresentations with reference to the defendant's assets. These questions can and should be explored upon retrial. We also find, after a careful review of the record, that the defendant did not prove by a preponderance of the evidence that the plaintiff willfully failed to disclose his illegal drug income with the intent to defraud the insurer.

For the foregoing reasons, the judgment of the circuit court of Warren County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

BARRY, P.J., and HEIPLE, J., concur.