THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD LEAHY, Defendant-Appellant.

Second District   No. 2—87—0250

Opinion filed April 27, 1988.

Allan J. Marco, of Marco & Stefanos, of Downers Grove, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Basil G. Greanias, of Decatur (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Defendant, Donald Leahy, appeals from his conviction, after jury trial, of driving under the influence of alcohol (DUI) in violation of section 11—501(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(2)) for which he was placed on probation for one year, fined $250, and ordered to attend DUI school. Defendant contends that the trial court improperly prevented him from presenting certain expert testimony, and the State failed to prove him guilty beyond a reasonable doubt.

Officer Tannahill (Tannahill) testified that at 11:40 p.m., on February 27, 1986, he observed defendant in his vehicle proceeding southbound on Cass Avenue, in Westmont. Tannahill observed defendant stopped at a red light with his car straddling a white line separating the two southbound lanes. When the light turned green, the officer followed defendant for about five blocks during which time defendant weaved toward the curb about six times, almost striking the curb. Tannahill pulled defendant's car over to the side of the road, and when defendant rolled down his window, Tannahill detected the odor of alcohol on defendant's breath and noticed that his eyes were bloodshot, watery, and swollen. Defendant required two to three minutes to find his driver's license, his clothes were wrinkled and off-center, his speech was slurred, mumbled, and almost unintelligible, according to the officer. While exiting the car, defendant used the car door as a prop. Tannahill also testified that defendant swayed attempting to bal-

ance himself during the heel-to-toe walking/turning test. Defendant could not walk a straight line and completely missed touching his fingers to the tip of his nose. Tannahill also indicated that defendant's legs were wobbly, and he had to explain to the defendant several times how to perform the tests. Tannahill opined that defendant was under the influence of alcohol.

At the police station, defendant was allowed to telephone his wife and attorney, and when Tannahill then requested him to take the breathalyzer test, defendant refused, indicating that his lawyer advised him not to do so if he felt he could not pass it. Defendant mentioned to Tannahill that he was diabetic but denied needing medical attention. Tannahill did not remember defendant asking him for sugar, and the officer was not allowed to testify regarding his opinion of the effects of diabetes.

For the defense, Wayne Muhs, the general manager of Suburbanite Bowl in Westmont, testified that from 6 to 7 p.m. on February 27, 1986, he met with defendant and others to discuss the sale of the business. Muhs, defendant, and others left the bowling alley to have dinner, where defendant consumed one cocktail. Later, when they returned to the bowling alley, Muhs observed defendant drinking a beer. When Muhs arrived at the police department after defendant's arrest, he noticed defendant's eyes were glassy and bloodshot and his speech was slurred. Muhs, however, did not believe that defendant was under the influence of alcohol but was exhibiting symptoms of diabetes.

Defendant's wife, Hazel Leahy, testified that defendant had been diabetic since he was eight years old. In her opinion, defendant was not under the influence of alcohol on February 27, 1986, and she thought defendant was having a reaction induced by diabetes. According to Mrs. Leahy, defendant has a grey tinge to his skin and perspires during diabetic reactions. Once at home, defendant drank orange juice, and his color returned.

Defendant testified that during the evening of February 27, 1986, he consumed a gin and tonic and a beer. As he was driving on Cass Avenue, defendant saw a police car pull over another car farther south on the road, and he went outside his lane in order to pass the vehicles. Defendant also stated that he was able to touch his nose during testing and that after the arrest, he asked for sugar, but was refused because it might influence the results of the breathalyzer test.

At a conference held on Friday, August 8, 1986, prior to trial, the court ruled that defendant's expert witness, an alcohol evaluator, would not be allowed to testify as to the effects of diabetes on an individual because the witness was not a physician nor qualified to

speak on the subject matter. Defendant declined to make an offer of proof and asked that the question be reserved.

At trial, defendant made an offer of proof regarding the qualifications of his expert, Linda Savage, who was a State-approved alcohol and substance abuse counselor, and prepared written evaluations used by the Secretary of State and other State agencies. Defendant's offer of proof by his counsel revealed that Savage had two years of training as an alcohol and substance abuse counselor, and held a master's degree. Defense counsel did not recall the nature of Savage's master's degree, nor did he detail Savage's work experience. Based on her interview with defendant and his history, Savage would testify that defendant was having an insulin reaction at the time of his arrest; that symptoms of an insulin reaction are similar to the effects of intoxication; and a diabetic having an insulin reaction will smell of alcohol even if he has not been drinking. Savage would further testify that, based on her review of a written report by Dr. Libert on April 5, 1986, defendant was an uncontrolled diabetic, and that a report by Floyd Misner, O.D., in January 1984, revealed that defendant had conjunctivitis which produced bloodshot eyes, and a dry eye condition caused by defendant's diabetes. The record is not clear whether Savage's proposed testimony relating to the medical reports would be based on her own independent conclusions or represented the conclusions of Dr. Libert and Floyd Misner. The court ruled that Savage was not qualified to testify on the effects of diabetes on an individual because she was not a physician and noted that defendant was free to present the testimony of a qualified medical expert.

Defendant and the State both rested, and, after an in-chambers meeting, defense counsel moved to reopen his direct examination of defendant. After brief further examination, both sides again rested, and the court advised the jury that, in view of the late hour, closing arguments would be heard the following Monday.

On Monday, after closing arguments were heard and instructions given, the case was submitted to the jury. During its deliberations the jury asked, "Can we have some proof of Leahy's illness?" The court referred the jurors to the instructions, and the jury subsequently found defendant guilty of driving under the influence of alcohol.

Defendant moved for judgment notwithstanding the verdict, a new trial, and arrest of judgment. During the hearing on defendant's post-trial motions, defense counsel argued that the trial court improperly precluded Savage from testifying as to the similarities between a diabetic insulin reaction and intoxication, and advised the court that Savage's qualifications included:

1. A bachelor's degree in psychology at Old Dominion University in Virginia.

2. A master's degree in social work in Downers Grove, IL.

3. Certification as social worker in mental health at George Williams.

4. Addictions counselor, alcohol and drugs, at Illinois Addictions Counselors and Certification Board.

5. Work experience at Ingalls Hospital, Harvey, IL, in alcoholism.

6. Work experience at Loyola Medical Center in the psychiatric unit.

7. Savage designed the chemical dependency unit at Silver Cross Hospital in Joliet.

8. Savage's personal experience in the Twelve-Step program in Allanon and Adult Children of Alcoholism.

These qualifications were not adduced during defendant's offer of proof relating to the witness. While addressing defendant's post-trial argument that the court improperly refused to allow him to present the testimony of a qualified expert witness on Monday during trial, the judge noted the following:

"Counsel is quite correct, while there is nothing in the record to indicate that he did make a request to call somebody on Monday, there was initially, Thursday, when he was advised that Linda Savage would not be permitted to testify as an expert witness, I would call to counsel's attention the questioning on the bottom of page 154, after the redirect testimony by Mr. Marco, on the bottom of the page:

'THE COURT: Anything further, Mr. Marco?

MR. MARCO: That is all that I have.

THE COURT: May I see counsel in chambers for one moment.'

And at that point we did retire to chambers without the Court Reporter being there. And I asked counsel, if in view of the time, it was after 5:00 o'clock, whether they had any commitments for that evening or whether they wished to or should we hold the closing over, if they had things that they wished to do. That I would hold the closing arguments over until Monday morning before regular court. Otherwise we would proceed to closing and put the jury down for the night at that time.

And it was the consensus of I think both Mr. Marco and Mr. Margolin at that time that it would be more convenient to not tie up all of Friday night and tie up the jury as well as them-

selves and the Court and they would prefer to come in early on Monday.

It was after that was agreed to that Mr. Marco then said, 'Can I bring in my other witness?' And at that point I did say, 'No. That it is too late. You have closed.' And then we would either finish up that night or we would go until Monday morning.

Mr. Marco then said, for the record, 'Judge, I would move that I be allowed to reopen my direct examination of Mr. Leahy for just two or three questions.' I said, 'You may.' You asked could you reopen the case and you did that on the record. So I think in your mind, in my mind and Mr. Margolin's mind that your case was completed. That we had gone into chambers to see about closing arguments. That you then asked could you reopen the case. I permitted you to do that.

* * *

But I think there was no question in anyone's mind that the defendant had rested its case and was permitted to reopen it to get additional testimony in with respect to the diabetes. I was trying to be fair about it, but I was not going to reopen the entire case.

The defendant had ample time in preparation of his case to secure appropriate, qualified medical experts to testify as to the effects of diabetes.

As I indicated to counsel before this argument started, that in my opinion, when I said medical experts, I did not mean only a physician, but anyone who was properly qualified in the area."

The trial court denied defendant's post-trial motions, and this appeal followed.

Defendant's first contention is that he was denied a fair trial because the court disqualified his expert witness thereby interfering with his right to put on a defense. Expert testimony is proper when the subject matter of the inquiry is such that only a person with skill or experience in that area is capable of forming a judgment. (*Bloomgren v. Fire Insurance Exchange* (1987), 162 Ill. App. 3d 594, 599, 517 N.E.2d 290, 293.) The test of the competency of an expert witness is whether he discloses sufficient knowledge of the subject matter to entitle his opinion to go to the jury. The expert must possess special skills or knowledge beyond that of an average layman. The burden of establishing the qualifications of an expert witness rests on the proponent of his testimony, and the standard is that the

determination of a witness's qualification rests within the sound discretion of the trial judge. *Bloomgren*, 162 Ill. App. 3d at 599, 517 N.E.2d at 293; *Baty v. Baty* (1980), 83 Ill. App. 3d 113, 115, 403 N.E.2d 747, 749.

■■ We conclude that the trial court did not abuse its discretion when it ruled that Savage did not qualify as an expert on the effects of a diabetic insulin reaction. Defense counsel's offer of proof at trial only revealed that Savage was an alcohol and substance abuse counselor, and that she had approximately two years of related training. Savage had a master's degree, but defense counsel did not recall the nature of her degree. While Savage may be a qualified expert regarding the abuse of alcohol and drugs, nothing was shown to indicate that Savage had the medical expertise to form an opinion as to the symptoms of a diabetic insulin reaction and whether defendant could have been having a reaction at the time of his arrest. Defendant's offer of proof is devoid of any facts indicating that Savage possessed sufficient skill, knowledge or experience relating to an insulin reaction, nor do we agree with defendant that Savage's additional qualifications presented to the trial court at the hearing of defendant's posttrial motions qualified her as an expert in that subject. Furthermore, we note that defendant's offer of proof indicated that Savage would give testimony relating to her review of a letter from Floyd Misner, O.D., regarding defendant's conjunctivitis and dry eye condition. On appeal, defendant states that Savage would have been asked questions concerning conjunctivitis of the eye and would have testified based "on her experience with that condition." We find no basis upon which to conclude that Savage would have acquired an expertise relating to eye infections through her work as an alcohol and substance abuse counselor so as to qualify her as an expert witness.

■■ ■ Defendant also argues that the trial court abused its discretion by refusing his request to present, the Monday following the evidentiary stage of the trial, the testimony of a witness qualified to give an opinion on the symptoms of a diabetic insulin reaction. The decision whether to grant a party's motion to reopen the case is within the trial court's discretion and will not be reversed absent a clear abuse of discretion. If a party fails to exercise due diligence in obtaining a witness' testimony, the trial court can properly refuse the motion to reopen. (*People v. Magby* (1967), 37 Ill. 2d 197, 203-05, 226 N.E.2d 33; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 561, 366 N.E.2d 914, *appeal denied* (1977), 66 Ill. 2d 639.) We note that defendant never moved to reopen his case on the record. The only indication that defendant requested the trial court to reopen his case to

present expert testimony relating to the symptoms of a diabetic insulin reaction appears in the trial court's statements at the hearing on defendant's post-trial motions. It is apparent from the trial judge's statements that defendant was informed on Thursday, August 7, 1986, that Savage would not qualify as an expert witness; accordingly, defendant requested that he be allowed to call a qualified expert. The trial commenced and both parties rested late the next day. At no time did defendant request a continuance to procure a qualified expert witness. After a discussion in chambers, a decision was made to postpone closing arguments until the following Monday. It was only at this point that defendant asked the court whether he could bring in an unidentified expert witness the following Monday. While the trial court refused defendant's request, the court did allow defense counsel to reopen his case on Friday to question defendant further about his diabetic condition. We consider that defendant had every opportunity to present a competent expert in support of his defense. Defendant knew that his proposed expert was not qualified on Thursday, but yet failed to raise the issue again or seek a more qualified witness until both parties rested and had scheduled closing arguments. Furthermore, the jury heard testimony from defendant, his wife and Muhs that defendant was not intoxicated but was suffering from a diabetic reaction. Where a witness' testimony could have been presented at trial, defendant did not ask for a continuance on account of the witness' absence (*Martinatis v. People* (1906), 223 Ill. 117, 120, 79 N.E. 55), and the evidence is cumulative in nature, not necessarily leading to a change in result (*People v. Coleman* (1981), 100 Ill. App. 3d 306, 312, 426 N.E.2d 1124), a new trial will not be granted.

Defendant's second contention is that the State did not prove him guilty beyond a reasonable doubt. We disagree. In *People v. Ahern* (1983), 119 Ill. App. 3d 532, 456 N.E.2d 852, *appeal denied* (1984), 99 Ill. 2d 530, the court held that a police officer's testimony as to a motorist's erratic lane crossings, swaying and unsure steps, strong odor of alcohol on his breath, and his thick-tongued speech was sufficient to sustain the motorist's conviction for driving under the influence of alcohol. Similarly, in this case, Officer Tannahill testified that defendant crossed over the line markings six times in a five-block area, almost hitting the curb. During the field sobriety tests, defendant swayed, propped himself on the car, and missed touching his nose with his fingers. The officer smelled alcohol on defendant's breath, his eyes were bloodshot, and speech slurred. Defendant admitted having consumed alcohol that evening, and refused to take the breath test, stating to Tannahill that his attorney advised him not to take the test

if he did not think he could pass it. Evidence of a person's refusal to submit to a chemical test can be used in a criminal action arising out of acts alleged to have been committed while the person under the influence of alcohol was in control of a motor vehicle. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(c); *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 141-42, 461 N.E.2d 410.) We conclude that the State established defendant guilty beyond a reasonable doubt.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.