# Illinois Official Reports

## Appellate Court

***Unitrin Preferred Insurance Co. v. Dobra*, 2013 IL App (1st) 121364**

| | |
|---|---|
| Appellate Court Caption | UNITRIN PREFERRED INSURANCE COMPANY, as subrogee of Emin Tuluce and Annalisa Tuluce, Plaintiff-Appellant, v. FLAVIU GEORGE DOBRA, d/b/a FGD Construction, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-1364 |
| Filed | November 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a fire that occurred while defendant construction company was applying floor finish to the home of plaintiff's insureds, the jury's finding that defendant's actions were not the proximate cause of the fire was upheld on appeal over plaintiff's contention that the trial court's admission of the testimony of defendant's expert witness as to the cause and origin of the fire usurped the role of the jury and prejudiced plaintiff, since defendant's expert was qualified to testify based on his experience and training, there was no indication plaintiff was precluded from introducing its own expert testimony, and the province of the jury was not invaded merely because plaintiff did not like the outcome. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-012772; the Hon. Thomas E. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Leahy, Eisenberg & Fraenkel, Ltd., of Chicago (Robert Ostojic, of counsel), for appellant |
|---|---|
| | Lipe, Lyons, Murphy, Nahrstadt & Pontikis, Ltd., of Chicago (Edward J. Murphy, of counsel), for appellee. |
| | |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff-appellant, Unitrin Preferred Insurance Company (Unitrin), appeals from a judgment entered by the circuit court of Cook County, which denied Unitrin's motion for a new trial following a jury verdict in favor of defendant-appellee, FGD Construction (FGD). Unitrin's action arose as a result of a fire which damaged the home of Unitrin's insured, the Tuluce family. The jury found that FGD's actions in applying flooring finish to the Tuluce home was not a proximate cause of the fire and ruled in favor of FGD. At trial, the trial court admitted testimony of FGD's expert witness who opined on the issue of the cause and origin of the fire. On appeal, Unitrin contends that: (1) the trial court erred in allowing FGD's proffered expert witness to testify as to the cause and origin of the fire; and (2) the expert witness's testimony usurped the role of the jury and prejudiced Unitrin. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND
¶ 3    Emin and Annalisa Tuluce (collectively, Tuluce) contracted with FGD to install and finish hardwood flooring in the Tuluce home in Barrington, Illinois. On September 15, 2007, FGD was to complete the flooring work at the Tuluce home and apply Synteko floor finish to the first floor of the home. The Synteko floor finish used was a flammable liquid and vapor. The Synteko product warned users to eliminate all pilot lights, and to keep the house ventilated when using the product. The Tuluce family went to a hotel for the night, and while flooring work was being completed FGD's employees worked at the Tuluce home until approximately 5 p.m. on the day in question. At approximately 8:30 or 9 p.m. that night, one of FGD's employees returned to the residence to retrieve equipment and to check to see if the floor finish had dried.

- 2 -

¶ 4        On September 16, 2007, at approximately noon, the Tuluce family returned to their home and discovered the Barrington fire department had been summoned. The fire was extinguished and the fire department's investigation began. Unitrin paid to repair the damage resulting from the fire and sought to recover $929,677.22 from FGD, giving rise to this lawsuit.

¶ 5        Unitrin and FGD retained experts to examine the scene and physical evidence of the Tuluce home. Photographs were taken during all inspections. Unitrin and FGD each retained a certified fire cause and origin expert and an electrical engineer. Each came to different conclusions as to the cause and origin of the fire. At a preliminary hearing, each expert gave a completely different opinion regarding the origin and cause of the fire.

¶ 6        In addition to the conflicting fire cause and origin experts' testimony, there was also conflicting testimony from firefighters who were at the scene of the fire. One firefighter testified that the fire originated in the first-floor kitchen. He came to this conclusion based on the "burn patterns." Those patterns suggested the fire burned from the "top down from the kitchen to the basement." Another firefighter testified that during his extinguishment of the fire, he stood on the kitchen countertop and kicked the television set off the countertop. He said that there was no fire on the kitchen countertop or the television.

¶ 7        On March 4, 2011, prior to trial, FGD retained Dr. Frederick Mowrer (Dr. Mowrer), a fire scientist and fire protection engineer, to testify at trial. Dr. Mowrer has a bachelor of science degree from the Illinois Institute of Technology in fire protection and safety engineering, a master of science degree in engineering, and a Ph.D. degree in fire protection engineering and combustion science from the University of California Berkley. Dr. Mowrer has authored numerous publications in the field of science and fire protection engineering, including a number of published articles related to the spread of fire, fire development, and fire dynamics. Dr. Mowrer has been a member of the National Fire Protection Association (NFPA) for 35 years. He was also involved in the development of *NFPA 921 Guide for Fire and Explosion Investigations* (NFPA 921), which has been an important and widely used reference source in fire cause and origin determinations, since its inception in 1992. Additionally, Dr. Mowrer served on the NFPA technical committee on fire tests and was chairman of the NFPA research section.

¶ 8        Dr. Mowrer's testimony dealt with which of the experts' opinions was correct as to the cause and origin of the fire. According to Dr. Mowrer, Unitrin's expert's opinion as to the cause and origin of the fire was inconsistent with the evidence. However, FGD's expert's opinion as to the cause and origin of the fire was consistent with the evidence. The basis for Dr. Mowrer's opinion was a review of the photographs of the scene and Dr. Mowrer's testing of the two hypotheses developed by the fire cause and origin experts through the application of NFPA 921.

¶ 9        Prior to trial, Unitrin submitted two motions *in limine* to bar certain testimony of Dr. Mowrer. Only one of these motions is at issue in this appeal. In the motion *in limine* at issue, Unitrin sought to preclude Dr. Mowrer's opinions regarding which expert's opinion was correct as to the cause and origin of the fire. Unitrin alleged that Dr. Mowrer lacked the qualifications to indirectly opine as to the cause and origin of the fire because Dr. Mowrer was not an expert in the field of fire cause and origin. Unitrin argued that Dr. Mowrer was a fire

protection engineer, which is different from a fire cause and origin expert, and, as such, was not qualified to give testimony as to the cause and origin of the fire. Additionally, Unitrin argued that Dr. Mowrer's method of reviewing photographs to reach his conclusion was improper. Unitrin also argued that allowing Dr. Mowrer to testify as to the cause and origin of the fire was cumulative of the testimony of FGD's expert.

¶ 10      On July 12, 2011, the trial court entertained lengthy arguments on the motion *in limine* and initially barred Dr. Mowrer from testifying as to his opinion on the cause and origin of the fire. The trial court expressed that there was a "serious question about whether or not Dr. Mowrer would be qualified to express an opinion as to the fire's origin." The trial court's reasoning in barring Dr. Mowrer's testimony was as follows:

> "[Dr. Mowrer did not] have the right to add his weight to say that [he] thinks that he has an opinion with regard to the [fire's] origin and that the origin articulated by another witness is the origin because [Dr. Mowrer] wasn't retained for that purpose *** and [by allowing Dr. Mowrer's testimony] he is doing indirectly what he is not retained to do directly."

However, the trial court did allow Dr. Mowrer to discuss his familiarity with NFPA 921 because it found that he was qualified to discuss NFPA 921.

¶ 11      FGD chose to withdraw Dr. Mowrer as a witness since he was barred from testifying as to the cause and origin of the fire. Instead, FGD made an offer of proof. During the offer of proof, Dr. Mowrer testified about the following: his qualifications as a fire scientist and fire protection engineer; his involvement with NFPA and the development of NFPA 921; the relationship between the discipline of fire science and the determination of fire cause and origin; Dr. Mowrer's analysis of the postfire damage depicted in photographs of the fire scene; and how that evidence led him to his opinion. The trial court then reversed its earlier ruling and held that Dr. Mowrer would be allowed to testify as an expert regarding the cause and origin of the fire based on his experience and training. Counsel for Unitrin did not cross-examine Dr. Mowrer on his qualifications.

¶ 12      On July 20, 2011, the trial commenced in the circuit court of Cook County. Unitrin's expert testified that the fire originated in the basement of the Tuluce home near a furnace. Unitrin's expert determined that the fire was caused by flooring finish that dripped down a floor duct and into the basement where vapors from the flooring finish were ignited by a furnace pilot. FGD's fire cause and origin expert testified that the fire originated on a kitchen countertop near a television set and was caused by an undetermined electrical fault in the television. Both experts stated that their findings were based on the application of the scientific method used for developing hypotheses about the cause and origin of fires set forth by NFPA 921. Dr. Mowrer testified about his involvement in NFPA, his academic credentials and publications; his qualifications as a fire protection engineer; and the relationship between fire science and the cause and origin of fires. Dr. Mowrer stated that "fire science is the foundation of cause and origin." Dr. Mowrer testified about how he tested the two hypotheses of Unitrin's and FGD's experts by analyzing the photographs taken in the course of the postfire investigation. He concluded that the physical evidence was not consistent with a fire originating in the basement utility room, as hypothesized by Unitrin's expert witness. Dr. Mowrer testified that the opinion

of FGD's expert as to the origin of the fire was consistent with the postfire evidence. On cross-examination, Unitrin did not cross-examine Dr. Mowrer on his academic background or qualifications.

¶ 13    On July 21, 2011, the jury returned a verdict in favor of FGD and against Unitrin. According to Unitrin, after the jury returned its verdict, jurors told both Unitrin's and FGD's counsel that the jurors viewed Dr. Mowrer's testimony as the most significant because Dr. Mowrer "looked at both sides' theory [*sic*]."

¶ 14    Unitrin subsequently filed a motion for a new trial. That motion was denied. Unitrin filed a timely notice of appeal. Therefore, this court has jurisdiction to consider Unitrin's arguments on appeal pursuant to Illinois Supreme Court Rule 303 (eff. June 4, 2008).

¶ 15                                    ANALYSIS

¶ 16    We determine the following issues on appeal: (1) whether the trial court erred in allowing the testimony of Dr. Mowrer as to the cause and origin of the fire; and (2) whether the testimony of Dr. Mowrer usurped the role of the jury and prejudiced Unitrin during trial.

¶ 17    As a preliminary matter, we determine the standard of review to be applied in this case. This court applies an abuse of discretion standard of review in considering a trial court's ruling on a motion for a new trial. *Graham v. Northwestern Memorial Hospital*, 2012 IL App (1st) 102609, ¶ 38. "A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." (Internal quotation marks omitted.) *Id.* ¶ 21. Unitrin suggests that a more rigorous abuse of discretion standard should be applied. Citing to *Graham*, Unitrin argues that less latitude should be given to the circuit court in denying a request for a new trial. We disagree, as this court has consistently used an abuse of discretion standard in reviewing a trial court's motion for a new trial, regardless of whether the trial court denied or granted such motion. *Bisset v. Village of Lemont*, 119 Ill. App. 3d 863, 865 (1983). The court in *Graham* did not hold that the standard of review upon denial of a motion for a new trial was anything other than an abuse of discretion. This court also applies an abuse of discretion standard when reviewing a trial court's decision in admitting expert testimony. *People v. Free*, 94 Ill. 2d 378, 410 (1983). Therefore, we apply the abuse of discretion standard in addressing Unitrin's arguments on appeal.

¶ 18    We first determine whether the trial court erred in allowing Dr. Mowrer to testify as to the cause and origin of the fire. Unitrin argues that the trial court abused its discretion when it allowed Dr. Mowrer to offer indirect opinion testimony as to the origin and cause of the fire because Dr. Mowrer does not possess the requisite expertise in the field of fire cause and origin investigation. Unitrin claims that fire protection engineering deals with the prevention and mitigation of fires, and not the cause of fires. Unitrin also asserts that Dr. Mowrer was not retained to directly opine as to the cause and origin of the fire. Rather, Unitrin contends that Dr. Mowrer was retained to opine regarding which opinion was correct or incorrect between the parties' cause and origin experts. Unitrin argues that a generalized knowledge of fires is insufficient to qualify a person as a fire cause and origin expert.

¶ 19        In response, FGD argues that Dr. Mowrer's area of expertise, fire science, is a concept central to the determination of fire cause and origin. Thus, FGD asserts that Dr. Mowrer was qualified to testify as to the cause and origin of the fire. FGD states that Dr. Mowrer was retained to employ his knowledge of fire dynamics and fire spread by testing the hypotheses of the two experts through the application of NFPA 921, the accepted method of determining a fire's cause and origin in the fire investigation community. FGD argues that Dr. Mowrer's expertise in fire science and NFPA 921 qualifies him to testify as an expert as to the origin and cause of the fire. FGD concedes that fire science does not address the procedural aspects of cause and origin investigation, such as documenting the scene of the fire and photographs. However, FGD points out that fire science is related to fire investigation in the scientific sense in that it provides an understanding of how fires develop, how materials contribute to fire, and how buildings react to fire from a scientific standpoint. FGD asserts that Dr. Mowrer's area of expertise in fire science and fire protection engineering "looks at the science behind the origin and cause [of a fire]" underlying the determination of fire cause and origin investigation. As such, FGD argues that Dr. Mowrer is qualified to testify as to the cause and origin of the fire.

¶ 20        Illinois Rules of Evidence 702 (eff. Jan. 1, 2011) provides:

"TESTIMONY BY EXPERTS

        If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

An individual will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons and where such testimony will aid the trier of fact in reaching its conclusions. *People v. Novak*, 163 Ill. 2d 93, 104 (1994). "The test of competency of an expert witness is whether he discloses sufficient knowledge of his subject matter to entitle his opinion to go to the jury." *Gibson v. Healy Brothers & Co.*, 109 Ill. App. 2d 342, 353 (1969). An expert need only have knowledge and experience beyond that of an average citizen. *Novak*, 163 Ill. 2d at 104. There is no predetermined formula for how an expert acquires specialized knowledge or experience and the expert can gain such knowledge through practical experience, scientific study, education, training or research. *Id.* Whether an individual is an expert on a particular subject is a matter generally reserved to the sound discretion of the trial court. *Schaffner v. Chicago & North Western Transportation Co.*, 129 Ill. 2d 1, 36 (1989).

¶ 21        We disagree with Unitrin's argument that the trial court erred in admitting Dr. Mowrer's testimony. It is clear from FGD's offer of proof and Dr. Mowrer's testimony at trial that Dr. Mowrer is qualified to testify as to the cause and origin of fires. Applying the accepted criteria for making the determination of whether Dr. Mowrer qualifies as an expert is useful in our analysis of the trial court's ruling. First, Dr. Mowrer's testimony assists the trier of fact with an issue of which a layperson would not have general knowledge, specifically, the issue of fire causes and origins. Second, Dr. Mowrer was qualified to testify on such matters because of his education, research, training, and scientific study of fire science and fire protection engineering. Dr. Mowrer completed the education necessary to hold himself out as a fire scientist and fire protection engineer. Additionally, he has researched and written numerous

publications in the field and science of fire protection engineering, including a number of published articles related to the spread of fire, fire development, and fire dynamics. Dr. Mowrer was associated with the development of NFPA 921, the specific method that fire investigators have relied on to create hypotheses of fire causes and origins. We find that Dr. Mowrer is qualified to testify as an expert regarding the cause and origin of the fire.

¶ 22 Unitrin cites to numerous cases from other states in support of its argument that the trial court should have barred Dr. Mowrer from testifying. The cases cited and relied upon by Unitrin do not support its arguments and are not persuasive to this court. For example, Unitrin cites *Bloomgren v. Fire Insurance Exchange*, 162 Ill. App. 3d 594 (1987). In *Bloomgren*, the plaintiff brought an action on an insurance policy to recover damages after a fire destroyed the plaintiff's home. *Id.* at 595-96. A volunteer fireman at the scene of the fire was assigned the duty of completing all incident reports of fires for the district. *Id.* at 597. The volunteer fireman testified at trial that he prepared the official incident report on the fire in compliance with the state statute relating to the investigation and prevention of fires. *Id.* The trial court admitted the incident report into evidence over the defendant's objection. *Id.* In the report, the volunteer fireman stated that in his opinion, the fire was caused by an electrical ignition factor. *Id.* The defendant obtained an expert witness certified in arson and fire investigation to testify that in his opinion, the fire was intentionally set with the use of a flammable substance. *Id.* at 597-98. The trial court found in favor of the plaintiff. *Id.* at 596.

¶ 23 On appeal, the defendant argued that the trial court erred in admitting the fire incident report into evidence, and relying upon it in the court's decision, because it contained opinion as to the cause and origin of the fire by a witness not qualified to testify to such a matter. *Id.* at 598. The Illinois Appellate Court reversed the judgment and remanded the case for a new trial. *Id.* at 599-600. Applying an abuse of discretion standard, this court found that the fire incident report was erroneously admitted into evidence because it contained an opinion as to the cause and origin of the fire by a person unqualified to give such an opinion. *Id.* The court reasoned that because the volunteer fireman did not have any training in the investigation of fires or their causes and origins, and had never conducted a formal cause and origin investigation of the fire, the report should not have been admitted into evidence. *Id.* at 599. In reversing the trial court, this court found that the incident report was prejudicial and materially affected the outcome of the trial. *Id.*

¶ 24 Unitrin's analogy of the case at bar to *Bloomgren* is misguided. Volunteer firemen are not in the field of fire science or fire cause and origin but, rather, are ordinary citizens serving their community. The incident report at issue in *Bloomgren* is distinguishable from Dr. Mowrer's testimony in the case at bar. Dr. Mowrer is a trained expert in the area of fire science and fire protection engineering and holds degrees in that scientific discipline. Dr. Mowrer demonstrated his expertise and qualifications to testify as to the cause and origin of fires in FGD's offer of proof and in his testimony at trial. He has the education and training to make him a qualified expert in fire science and fire protection, as well as the determination, cause and origin of a fire. This is demonstrated by his involvement in the development of NFPA 921, the widely accepted method of testing in determining the cause and origin of fires by the fire investigation community.

¶ 25 Thus, we do not agree with Unitrin that *Bloomgren* is analogous to the case at bar and find that Dr. Mowrer is distinguishable from the volunteer fireman in *Bloomgren* in that he is qualified to testify as an expert on the cause and origin of fires based on his experience and training. Accordingly, we hold that the trial court did not abuse its discretion in admitting Dr. Mowrer's testimony as to the cause and origin of the fire at the Tuluce home.

¶ 26 Finally, we determine whether the testimony of Dr. Mowrer usurped the role of the jury and prejudiced Unitrin at trial. Unitrin argues that Dr. Mowrer supplanted the role of the jury by "choosing" which party's theory was consistent with the facts, thus prejudicing Unitrin. Unitrin also argues that Dr. Mowrer's testimony materially affected the trial result because after trial, the jury said that Dr. Mowrer's testimony was the most significant as it "looked at both sides' theory [*sic*]." As such, Unitrin requests this court to reverse the trial court's judgment and remand for a new trial.

¶ 27 We disagree with Unitrin. An individual will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons and where such testimony will aid the trier of fact in reaching its conclusions. *Novak*, 163 Ill. 2d at 104. A jury is made up of ordinary citizens and is aided by expert determinations on issues unfamiliar to ordinary people. The jury is free to accept or reject expert testimony. Here, Dr. Mowrer testified on a matter that was not within the common knowledge of laypersons–the determination of the cause and origin of a fire through the application of NFPA 921. Dr. Mowrer was a qualified expert to testify as to such a matter, as explained above. The purpose of the testimony was to aid the trier of fact in coming to the conclusion of where and how the fire started. Thus, Dr. Mowrer's testimony falls squarely within the parameters of expert testimony by aiding the jury in a matter an ordinary citizen would be unfamiliar with. We note that there was no suggestion in the record that Unitrin was precluded from introducing an expert of its own to counter Dr. Mowrer's testimony. It chose not to do so. The jury was free to disregard the expert's testimony. Simply because Unitrin did not like the outcome of the case does not mean the province of the jury was invaded. Therefore, we hold that Dr. Mowrer's testimony did not usurp the role of the jury resulting in prejudice to Unitrin.

¶ 28 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 29 Affirmed.