THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID ROSARIO *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—85—3307

Opinion filed February 22, 1989.—Rehearing denied April 17, 1989.

Paul P. Biebel, Jr., Public Defender, and Michael J. Pelletier and Bruce Mosbacher, both of State Appellate Defender's Office, both of Chicago (Alison J. Norwood, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Al Tomaso, and Robert B. Berlin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a bench trial, defendants Richard Torres and David Rosario were convicted of murder and conspiracy to commit murder. The trial court sentenced Torres to a term of 34 years and sentenced Rosario to a term of 28 years. On appeal, Torres contends that he was denied a fair trial because Rosario's statement implicating him was admitted into evidence and that counsel was ineffective for failing to move for a pretrial severance. In addition, Torres contends that the trial court erred in barring his attempt to show that a prosecution witness had a bad reputation for truth in the community and that his sentence was excessive. Rosario contends he was denied effective assistance of counsel when his attorney failed to move for a pretrial severance.

Billy Dixon, an eyewitness, testified for the State that on November 13, 1984, at 9 p.m., he heard gang slogans being yelled outside. From his front door, he could see four people running from Brentano School. He identified Thomas Adachi, Stacey Crawford, Virginia Shay,

and the deceased, Joe Rodriquez. About 12 other people stood in the school yard. One was shooting at the four persons who were running and who then split up and ran in different directions. The deceased ran alone down an alley. Torres, carrying a sawed-off shotgun, followed until the deceased tripped over a fence and fell on his hands and knees. Torres leaned over the fence, shot the deceased in the back, dropped the gun and ran. Dixon identified Torres in a lineup several days later.

Thomas Adachi testified for the State that he and the deceased were members of the Spanish Lords. On November 13, 1984, they saw defendants at Brentano School. Rosario carried a blue duffle bag, which he opened, revealing a sawed-off shotgun. Adachi and the deceased ran, passing 10 to 15 people standing on the corner. Defendants and a third person chased Adachi and the deceased. Rosario handed the blue bag to Torres. The third person began shooting towards Adachi with a pistol. Shay and Crawford then ran with Adachi and the deceased. When the group split up and the deceased ran alone, Torres chased and shot the deceased after he fell. Adachi identified Torres in a lineup on November 15, 1984, and identified Rosario in a lineup on January 16, 1985.

Assistant State's Attorney Robert Babbitt testified that on January 16, 1985, he and Officer Schalk took a statement from Rosario. Rosario stated that on November 13, 1984, at about 6 p.m., he and several other persons were at the home of Jimbo Bates. They planned to go out with other members of their gang and get revenge for a gang killing which had occurred two years earlier. Several other people, including Torres, arrived at Bates' home. At 8:45 p.m., they began walking to Brentano School. Torres and Bates left together, and Bates carried a blue gym bag. Rosario saw Bates place the bag in the school yard. Various people were yelling gang slogans, and Bates and Torres began chasing two people across the street. Rosario then carried the gym bag and could see that it held a sawed-off shotgun.

Rosario pulled out the gun and handed it to Bates. "I pulled it out and gave it to [Bates], at which times, [Bates and Torres] started running through the alley." Roberto Gonzales, another man with Rosario, took out a pistol and began shooting at the two men who were being chased. Rosario saw the two pursued men split up, and a short time later he heard a loud noise. He described the final events preceding the shooting. Rosario and Gonzales were

"standing on the corner. *** And we started telling, the two guys that [Bates and Torres] were chasing, to come back, they won't come. They didn't have any guns or knives out, I didn't

see any weapons. They started running and [Gonzales] pulled the pistol out of his waistband and started popping at them. The two guys split up. And a short time later, I heard a big noise. We heard the noise. [Gonzales] and me ran \* \* \*.''

Officer Jerome Bogucki testified for Rosario that after he spoke to Adachi during the investigation, he marked only one offender in the police report. He had told Rosario, however, that he had been identified as a participant in the murder.

Officer Lawrence Poli testified for Rosario that at the time of the November lineup, Torres was the only offender in custody. He was identified by Dixon and Adachi.

Daniel Beauchamp testified for Torres that he was at home at 9 p.m. on November 13, 1984, when he heard gunshots. He looked out a window and saw a man lean over the fence and shoot another man with a shotgun. Beauchamp did not see the face of the shooter. Three months before trial, Torres' counsel showed Beauchamp some photographs, but he was still unable to identify the shooter.

The court sustained objections to the attempt by Torres' counsel through Beauchamp to establish Dixon's reputation for truth in the community. Beauchamp testified that he knew Adachi. Just after hearing the gunshots and coming out his front door, Beauchamp saw Adachi under the porch steps of his home.

Lori Lynn Beauchamp testified for Torres that she heard gunshots and looked out her window. She saw six people running, but did not see who fired or held the shotgun.

Marty Benavides testified for Torres that he heard the gunshots and looked out his window. He saw Adachi squatting down in the gangway by the side of the stairs to his house. Benavides then stated that he saw Rosario fire the shotgun.

Rosario's attorney moved for a mistrial on the basis that Rosario was prejudiced by Benavides' identification of Rosario as the shooter. Torres' attorney stated that he also was surprised by the testimony. The court found that Torres' attorney did not act in bad faith in not notifying Rosario's attorney prior to trial of Benavides' testimony. The court denied Rosario's motion for separate trials because there was no factual basis upon which counsel could have moved for a severance on the basis of known facts prior to trial.

Benavides testified further that Torres' attorney interviewed him a month prior to trial, showing him two photographs. He told Torres' attorney that one man looked familiar, and Benavides thought he looked like the person who did the shooting. Benavides testified that Torres' attorney asked Benavides if he would testify that the person

in the photograph was the shooter. While Benavides told Torres' attorney the man only looked familiar, when he saw Rosario in court, he felt more certain. Benavides testified that, other than in the courtroom and once in his backyard, he had never before seen Rosario.

Several times during Benavides' testimony, Rosario's attorney again moved for a mistrial, arguing that he had never been told that Benavides identified Rosario as looking familiar. The court denied the motions.

Timothy Pater, an investigator, testified for Torres that during his investigation Dixon stated to Pater that he did not see anything.

Torres testified on his own behalf that on November 13, 1984, at about 7 p.m., he was at Bates' home. Several people, including Rosario, later walked to Brentano School. Torres heard gunshots, but saw nothing. He just began running because he thought someone might be shooting at him. He never saw a blue gym bag. Torres denied having any knowledge of a plan to shoot someone.

Both defendants maintain they were prejudiced by the failure to sever the trials.

■■ Torres contends he was denied his right of confrontation and denied a fair trial due to the introduction at the joint trial of an extrajudicial confession inculpating Torres, where the confession was made by a nontestifying codefendant. (See *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056; *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) Similarly, Rosario argues that, because in his statement he denied guilt and blamed Torres, it was "almost inevitable that the lines of defense at trial will become inconsistent and antagonistic." On the basis of Rosario's statement alone, Rosario's counsel should have known "it was obvious that codefendant Torres' line of attack, in order to protect himself, would be to blame David Rosario for the shooting and negate his own involvement."

In his pretrial statement, Rosario stated that Torres was at the school. Rosario gave the shotgun to Bates. Torres ran through the alley with Bates, chasing two men. Shortly thereafter, Rosario heard a loud noise. In regard to the actual shooting, Rosario saw the men being chased "split up. And a short time later, I heard a big noise. We heard the noise. [Gonzales] and me ran ***." Rosario never stated that Torres had possession of the gun, shot the victim, or even was present when the shots were fired. Torres testified that he saw nothing.

Under such circumstances, Rosario's statement did not implicate Torres in the murder in the sense of attributing the commission of the

murder to him and, at most, is merely contradictory of Torres' defense rather than antagonistic to it. (*People v. Lumpkin* (1982), 105 Ill. App. 3d 157, 433 N.E.2d 1369; *People v. Holman* (1976), 43 Ill. App. 3d 56, 356 N.E.2d 1115.) Thus, no *Bruton* error occurred, and a severance was not required.

■ Both defendants maintain that their attorneys' failure to request a pretrial severance constituted ineffective assistance of counsel. Under *Strickland v. Washington* (1984), 466 U.S. 688, 88 L. Ed. 2d 674, 104 S. Ct. 2052, ineffective assistance of counsel is shown where defendant shows that counsel's performance was deficient where the errors were so serious that he was not functioning as the "counsel" guaranteed by the sixth amendment. Defendant must show the deficient performance prejudiced the defense.

■ We have already found that Rosario's statement did not directly inculpate Torres. Similarly, Torres testified that Rosario was present at Bates' and that Rosario walked towards Brentano School. Torres revealed no other facts regarding Rosario's presence, absence, or possible participation in the shooting. Counsel is not ineffective where the motion to sever would have been futile. *People v. Pangburn* (1976), 41 Ill. App. 3d 781, 354 N.E.2d 152.

■ Furthermore, because defendants' references to each other were not crucial links in the State's case against them, which included eyewitness testimony, it could not be said that the result of the trial would have been different had a severance been granted. (*People v. Lumpkin* (1982), 105 Ill. App. 3d 157, 433 N.E.2d 1369; *People v. Jones* (1980), 82 Ill. App. 3d 386, 402 N.E.2d 746.) Defendants were not denied effective assistance of counsel.

■ Rosario also contends that the judicial process broke down when Benavides testified that he saw Rosario shoot the deceased. The trial court found that the attorneys did not know of this information before trial and thus there was no basis upon which to grant a severance prior to trial. (See *People v. Stevenson* (1980), 90 Ill. App. 3d 903, 413 N.E.2d 1339.) We note further that the trial court expressly stated that it placed no credence in Benavides' testimony.

■ Torres next contends that he was denied a fair trial where the trial court barred his attempt to present evidence through Beauchamp that Dixon had a bad reputation for truth and veracity in the community. Any witness may be impeached by evidence showing generally a poor reputation for truth and veracity. *People v. Nash* (1966), 36 Ill. 2d 275, 222 N.E.2d 473.

■ The State concedes that the law does not support the trial court's decision to bar the impeachment. Instead, the State argues

that Torres failed to make an adequate offer of proof. (See *People v. Burris* (1971), 49 Ill. 2d 98, 273 N.E.2d 605.) The trial court, however, refused to allow an offer of proof. It interrupted counsel's attempt to make an offer of proof and simply sustained the State's objection as to the relevance of whether or not Beauchamp knew Dixon. Under these circumstances, we find the issue was not waived on appeal.

■■ ■ We find, however, that the failure to permit this impeachment is not reversible error. There was overwhelming evidence of Torres' guilt, including Adachi's eyewitness testimony and identification of Torres in a lineup. The improper limitation of cross-examination does not warrant reversal where there is no showing of manifest prejudice to defendant and where the prosecution's case does not stand or fall based upon the credibility of that witness. (*People v. Bingham* (1979), 75 Ill. App. 3d 418, 394 N.E.2d 430.) The error was harmless.

■■ Torres finally contends that the trial court abused its discretion in sentencing him to a term of 34 years. Absent an abuse of discretion, a sentence will not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The trial court here considered the presentence reports, which indicated Torres had received supervision for criminal damage to property and which reported his use of marijuana. The court also considered the statement of counsel and the evidence presented at trial. The court emphasized the brutal, senseless nature of the murder in imposing sentence. The 19-year-old Torres' youth did not require a different sentence. See *People v. Fabian* (1976), 42 Ill. App. 3d 934, 356 N.E.2d 982.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

RIZZI and WHITE, JJ., concur.