BROOKE INNS, INC., Plaintiffs-Appellees, v. S & R HI-FI AND TV, d/b/a Columbia Audio Video, Defendant-Appellant.

First District (1st Division)   No. 1—90—2374

Opinion filed June 21, 1993.

Wildman, Harrold, Allen & Dixon, of Chicago (Mark P. Miller, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Thomas A. McDonald, and George C. Ellison, of counsel), for appellees.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

This is an appeal by defendant from a judgment entered after a jury trial in favor of plaintiffs and against defendant for $1 million.

Plaintiffs filed a negligence action to recover for property damage to their home which resulted from a fire allegedly caused by defendant's employee while he was installing a television antenna cable in plaintiffs' residence. Defendant argues on appeal that: (1) the judgment in favor of plaintiffs should be vacated and judgment entered in its favor notwithstanding the verdict; (2) the trial court erred in granting judgment in favor of plaintiffs on the *res ipsa loquitur* count; and (3) defendant is entitled to a new trial because of numerous instances of error committed by the trial court and plaintiffs' attorney. For the reasons which follow, we affirm.

The record reveals that on October 1, 1981, Richard Coari was an employee of Columbia Audio Video whose assignment was to install coaxial cable at plaintiffs' home in Lake Forest, Illinois. Plaintiffs' home was comprised of four sections which formed a square and surrounded a large atrium. There were three floors on the south section, two on the west, one on the north and two on the east. Each section also had an attic over it. The two rooms and windows and stairwells were designated by number.

About 8 p.m. on October 1, 1981, a fire occurred at the home. There is conflicting evidence as to where in the home the fire began and what caused the fire. John A. Brooke testified that he hired defendant to provide an antenna receptacle in the ceiling of the game room of his home. He testified that about 8 p.m. on October 1, 1981, he was sleeping in the library of his home when he heard his son John yell "fire." At that point he took a fire extinguisher up the stairs to the second floor. Mr. Brooke stated that he saw smoke emitting from a trap door on the third floor, placed a ladder underneath the door, then used the fire extinguisher to push the door open. At that point, smoke escaped out of the scuttle hole. He then discharged the fire extinguisher until it was emptied, and ran down the stairwell to the second floor where he met a police officer. Mr. Brooke testified that the lights on both the second and third floors were still on at that time. The lights were also working in stairwell areas 205, 206, 211 and the third-floor storage room. Mr. Brooke testified that he saw the lights as he travelled up the stairwell and through the hallways in search of the fire. Mr. Brooke stated that lights were not flickering, and that there was no problem with the second-floor light fixture. He denied telling anyone that the light fixtures had been working intermittently for the past several months.

Plaintiffs' son, John E. Brooke (John), testified at trial that he arrived at the home about 8 p.m. He walked up stairwell 104 to the second-floor hall area 205, where he smelled smoke. He checked the fire

places on the second and first floors in the area of stairwell 211 where he heard the sound of fire crackling above him. He yelled "fire" and awakened his father, who was in the library on the first floor. At that time, Mrs. Brooke called the fire department and reported an electrical fire. John and Mr. Brooke then went upstairs with fire extinguishers to the game room in the west section of the second floor and the two walked up stairwell 211 to the third-floor storage room. John testified that he did not see flames on either the second or third floors.

Richard Coari, an employee of defendant, testified at trial as an adverse witness. He stated that he had installed television outlets at plaintiffs' home several days before the fire. He was alone in the attic on October 1, 1981, the day of the occurrence. He testified that he entered the third-floor attic, extended cable from the antenna booster to the west end of that attic and then extended the cable north into the second-floor attic. He used fish tape to feed the cable through the "plenum" space. He testified that he then exited the third-floor south attic, entered the second-floor west attic, and crawled through the second-floor west attic to get the cable he had earlier dropped. There was no light in the attic except the trouble light which he used to illuminate the plenum space. He plugged it in at various electrical outlets as he moved around. He testified that his plastic drop light was yellow or orange plastic and had a hinged bulb guard.

Coari stated that about 4 p.m., he and Mr. Brooke carried a large television and screen into the second-floor game room in the west wing. He stated that he did not finish the project that day and left about 5 p.m. He kept the cable in the attic over the game room that night. Coari claimed that he learned of the fire two days after it occurred.

John Geisler, a witness for plaintiffs, testified at trial that about three days before the fire he spoke with Coari when he came to his home to drop off speaker wire. He testified that Coari at that time told him that he had been working at plaintiffs' home running cable and had dropped the drop light down a hole to light the area in which he was working. He stated that the light broke and started a fire within the area which he thought he had put out. He later discovered that plaintiffs' home had burned. Defendant did not discover that Geisler was a witness until August 4, 1989.

Robert Bambenek testified for plaintiffs as an expert witness. Bambenek was not a firefighter or a State-certified fire investigator, but had done extensive fire investigation work over a 12-year period. Bambenek examined plaintiffs' third-floor attic on October 21, 1986.

This was about five years after the fire. The third-floor area damaged by the fire at that time had been repaired and the home had been remodeled. He also admitted that within the five-year period after the fire, pipefitters and electricians had been in the attic installing sprinklers, lights and heat and smoke detectors.

Bambenek testified that while inside the second-floor west attic, he found cigarette butts, empty cigarette packages, a broken light bulb, and a white plastic bulb guard for a drop light.

Bambenek reviewed the depositions of Mr. Brooke and Coari, and also reviewed technical documents and floor plans as part of his investigation. However, he did not speak with the Lake Forest firemen or read their statements. He also testified that he did not read the report prepared by plaintiffs' second expert, Keery Padfield. Bambenek opined that the probable cause of the fire was the drop light that was either placed upon or fell upon the cellulosic insulation.

Following the fire, about 10 photographs were taken of the inside of the home. Those photographs were offered into evidence by plaintiffs as exhibits 41 through 50. Mr. Brooke testified that exhibit 41 depicted area 205 with holes in the ceiling made by firemen, and was taken one or two days after the fire. Exhibit 44 depicted stairwell 205 and showed a tapestry hung on the wall of the landing that did not sustain any fire damage. Exhibit 44 was taken the day after the fire. Exhibits 48 and 49 were taken about three months after the fire. Exhibit 48 depicted area 205 after the plaster which had been water damaged had been removed, and exhibit 49 depicted window 205 and the curtains. Exhibit 50 depicted the main stairwell with the windows and curtains still intact, and the ceiling plaster had been removed. Plaintiffs testified that none of these exhibits depicted any fire damage.

Defendant claimed that the time and/or date the photographs were taken were never established. It further claimed that plaintiffs never established whether exhibit 44, showing the 205 stairwell wall that Beatty tore open to find the burned conduit, was taken before or after the fire damage had been cleaned from the home.

Georgia Brooke testified as an adverse witness for defendant. She stated that on the day of the fire Coari was alone in the attic and she assisted him in locating the amplifier in the third-floor attic. She stated that Coari was responsible for stringing nonelectrical coaxial cable in the game room. Mrs. Brooke testified that prior to the night of the fire there had not been any malfunctioning chandeliers or light fixtures in the home. She further testified that the electrical outlets in

the home were functioning properly and that she was not aware of any potential fire hazards in the home.

On cross-examination Mrs. Brooke testified that earlier on the day of the fire she saw Coari carrying a ladder and drop light. She stated that he left the home about 5 p.m. and that she did not believe he had the drop light with him at that time. Mrs. Brooke identified, in court, items that were retrieved from the home by Bambenek, including the casing for a drop light, a light bulb and insulating material.

Lake Forest fire department Lieutenant Robert Wilkins and fireman Raymond Fontana testified in defendant's case in chief that they arrived at the scene about 8:22 p.m. Fontana testified that he did not see any fire outside the home and once inside he did not see fire, but felt heat and saw smoke coming through the scuttle hole leading to the third-floor southwest attic. Wilkins testified that he saw fire on the second-floor ceiling area 211 C and stairwell 206.

Although the court denied defendant's motion to admit the official fire department report which was prepared in part by Wilkins, the court allowed plaintiffs to use a portion of the fire department report for cross-examination of Wilkins.

Lieutenant Beatty testified at trial that he conducted an official investigation of the fire on October 2, 1981. Beatty testified that during his investigation Mr. Brooke told him that one of the light fixtures in the area of stairwell 207 had been working intermittently for the past several months and that at the time of the fire it was still malfunctioning. Beatty stated that he recorded the conversation he had with Mr. Brooke in the official Lake Forest fire department report, which was filed with the State Fire Marshall.

Beatty testified that he began his investigation in the area above the second floor. Beatty concluded that electrical wiring in the conduit located inside the west exterior wall of the 205 stairwell which connected to the malfunctioning light fixture caused the fire.

Dr. Prosser, an electrical engineer, testified as an expert for defendant. He explained that arcing is a process of electrical current jumping over a gap between two conductors. The electricity jumps from the bare wire to the metal conduit, creates an electrical arc and starts the fire. He stated that the architect's field reports written shortly after the fire showed that the architect had found the wiring to be old, brittle and dry. The court barred Prosser from using photographs to demonstrate arced wiring.

Lake Forest police officer Michael Havey testified at trial that he was the dispatcher who spoke with Mrs. Brooke when she called. He recorded her call in writing on a "dispatch card." The trial court

barred defendant from admitting the dispatch card into evidence, or using it to refresh Mrs. Brooke's recollection.

Lieutenant Schumann, a certified fire inspector, testified at trial as an expert witness for defendant. He stated that he inspected the Brookes' home to familiarize himself with the home's layout. He also met with the Lake Forest firemen who had fought the fire, as well as Lieutenant Beatty. He testified that in his opinion the fire started in the west wall at the second-floor stairwell, communicated to the second-floor attic and eventually to the third floor. Schumann also reviewed deposition reports. He opined that an electrical conduit at the point of origin had malfunctioned and caused the fire. His opinion that the cause of the fire was electrical was based on the fact that there was nothing else located at the point of origin except the electric conduit. Schumann acknowledged that the area of heaviest damage was the third-floor attic on the southwest side. He stated that he never saw the wiring that caused the fire. He explained that a V-pattern is often the sign of the origin of the fire, since fire burns upwards.

Gurnee, Illinois, police Chief Henry Schwarz provided an evidence deposition as to the reputation of Geisler in the community. In his deposition testimony, he testified that he knew Geisler's general reputation for truth and veracity in the community in which they lived. Schwarz testified that Geisler's reputation was poor. He stated that as the police chief, he personally confronted Geisler with an accusation that Geisler had forged a check and Geisler agreed to make restitution on it. The court disallowed this testimony into evidence.

Keery Padfield was hired by plaintiffs' insurer to investigate the fire. Padfield was disclosed as an expert witness, deposed, but he was not called at trial to testify.

Steven Layng was a laboratory technician who worked with Padfield. The record reveals that defendant disclosed Layng as an expert, listed him as an expert in answer to plaintiffs' interrogatories, but that Layng was not called to testify at trial.

Following the presentation of evidence, the jury was instructed on the theory of negligence and *res ipsa loquitur*. The jury was given general rather than special verdict instructions. Defendant objected to separate verdicts on two separate counts. The jury returned a verdict in the amount of $1 million in favor of plaintiffs. This appeal followed.

Defendant first argues that the trial court erred in denying its motion for directed verdict on both the negligence and *res ipsa loquitur* counts. Defendant maintains that the jury verdict should be vacated and judgment entered in its favor. Specifically, defendant con-

tends that plaintiffs did not introduce any evidence to prove that Coari's conduct or method of cable installation was careless. Defendant further maintains that when the evidence is viewed in its aspect most favorable to the plaintiffs, all of the evidence so overwhelmingly favors defendant that a verdict contrary to one in defendant's favor could never stand. Defendant also contends that the court erred in denying its motion to dismiss plaintiffs' amended complaint.

In deciding whether to direct a verdict or to enter judgment *n.o.v.*, it is incumbent upon the trial court to apply the standard enunciated by our supreme court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. There the court held that judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick*, 37 Ill. 2d at 510.) In this case, when all the evidence is viewed in its aspect most favorable to plaintiffs, it cannot be said that it so overwhelmingly favors defendant that no contrary verdict based on the evidence could stand. In fact, the evidence here was sufficiently balanced, and in our opinion, it would have been highly inappropriate to direct a verdict in this case. *Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 456 N.E.2d 192.

Here, plaintiffs proffered the testimony of Robert Bambenek, a cause and origin fire expert. Bambenek was a mechanical engineer, had investigated over 800 fires, and had been qualified to testify as an expert on more than 50 occasions. Bambenek testified that he examined plaintiffs' third-floor attic about five years after the fire. He testified that although there had been work performed on the premises, the premises were sufficiently unchanged such that he was able to determine the point of origin, the area of heaviest damage, the direction of the fire and the source of ignition. He also reviewed the deposition testimony of Mr. Brooke and Coari, in addition to technical documents and floor plans. Based upon the burn pattern from west to east, he opined that the fire originated in the west end of the third-floor attic. Bambenek also relied on the fact that Mr. Brooke testified in his deposition that he saw flames in the third-floor attic and that the fire damage in the second-floor attic was at the extreme south end. Bambenek explained that the fire communicated from the third floor to the second-floor attic, and that the fire damage in the second-floor attic was at the extreme south end. Bambenek explained that the fire produced a point of secondary origin, an area which appeared to be, but was not, in fact, the true origin of the fire.

Bambenek stated that while in the second-floor west attic he found cigarette butts, empty cigarette packages, a broken light bulb, and a white plastic bulb guard for a drop light. He opined that the probable cause of the fire was the drop light that was either placed upon or fell upon the cellulosic insulation. His opinion was based upon the location of the fire, the nature of the materials, the time of discovery of the fire and Coari's departure from the home.

John Geisler testified that about three days before the fire he spoke with Coari when Coari came to his home to drop off speaker wire. Geisler testified that Coari told him he had worked at the Brookes' home on the day of the fire, ran a cable at the home and dropped the "drop light" down a hole to light the area in which he was working. Geisler testified that Coari told him that the light broke and started a fire which he thought had been extinguished.

Defendant maintains that the evidence established by Bambenek was based on speculation and lacked any factual basis. It contends that Bambenek's opinion that Coari started the fire with his drop · light was based solely on the fact that a white plastic bulb guard was found in the second-floor attic five years after the fire. Defendant contends that there was a discrepancy as to the color of the bulb guard. It maintains that Coari testified that the guard was yellow or orange, while Mrs. Brooke testified that the drop light was black with a wire casing and the bulb guard which Bambenek found was white. Defendant further maintains that there was substantial evidence that the fire was caused by an electrical malfunction in plaintiffs' wiring, and not Coari's negligence. It asserts that Mr. Brooke told Lieutenant Beatty that the second-floor hall lights had been working intermittently for several months and at the time of the fire were still malfunctioning.

In this case, Bambenek testified that the fire began on the third floor after the drop light either failed or was placed upon the cellulosic insulation. Lieutenant Beatty, a State-certified fire investigator, testified that the fire started on the second floor and was caused by arcing in the conduit in the exterior wall of the second-floor stairwell. Thus, the issue was that of credibility. A trier ·of fact is not required to accept defendant's statements, and based on the evidence presented, we are not persuaded that the evidence so overwhelmingly favors defendant that no contrary verdict could stand. Thus, the court did not err in denying defendant's motion for directed verdict on the issue of negligence.

Defendant also argues that the court erred in denying its motion for directed verdict on the issue of *res ipsa loquitur*. Specifically,

defendant argues that plaintiffs failed to prove that the fire would ordinarily not have occurred without the absence of negligence, and that defendant had exclusive control of the instrumentality which caused the fire.

To succeed on a *res ipsa loquitur* count, a plaintiff must show the injury: (1) is the kind which ordinarily does not occur in the absence of negligent acts; (2) was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) was not due to any voluntary act or neglect on the part of plaintiff. (*Sunderland v. Tri-City Community Unit School District No. 1* (1990), 193 Ill. App. 3d 266, 549 N.E.2d 992.) A plaintiff need not conclusively prove all the elements of *res ipsa loquitur* in order to invoke the doctrine. He need only present evidence reasonably showing that elements exist that allow an inference that the occurrence is one that ordinarily does not occur without negligence. *Dyback v. Weber* (1986), 114 Ill. 2d 232, 242, 500 N.E.2d 8.

■ Here, plaintiff presented sufficient evidence for the jury to conclude that the fire would not ordinarily have occurred but for Coari's negligence. John Brooke testified that he arrived home about 8 p.m. on October 1, 1981, and walked up stairwell 104 to the second-floor hall, where he smelled smoke. He checked the fireplaces on the first and second floors, then checked the basement, but did not see fire. After advising his father of the situation, John and Mr. Brooke discovered smoke coming from a trap door on the third floor. They opened the door and smoke escaped. On the date of the fire, John and Mr. Brooke had used stairwell 211, but had done so before 8 p.m. Mr. Brooke stated in deposition that to the best of his knowledge all of the light fixtures in the home were functioning properly at the time of the fire. He testified that the original electrical service box was located in the basement of the home prior to the fire, and that there was no exposed wiring in the ceiling or the wall that would have been the source of the fire. Mr. Brooke further testified that he had a maintenance man and other staff who did work around the home, but none of whom would have been there on a daily basis, or had reason to be on the third floor.

Mrs. Brooke testified that on the day before the fire occurred she let Coari into the house to install coaxial cable on the second floor. The following day she led Coari to the third floor to show him the room with the access panel. Although Coari left the home a few hours before the fire, the evidence reveals that none of the staff or family members were in the attic on that date.

The courts have interchangeably used the phrases "exclusive control" and "management and control" in dealing with the doctrine of *res ipsa loquitur*. (*Sunderland v. Tri-City Community Unit School District No. 1* (1990), 193 Ill. App. 3d 266, 549 N.E.2d 1992.) The amount of control necessary for the doctrine is that which is necessary to support an inference that the defendant was negligent. (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 272, 443 N.E.2d 569.) Here, plaintiffs by their testimony established that defendant had exclusive possession of the attic on the day of the fire and that the fire resulted from the negligent use of a drop light. It is clear that many of the factual questions arose from circumstantial evidence. That fact, however, does not diminish their importance in reaching a verdict. Where there is no eyewitness, a party has the right to prove his allegations by circumstantial evidence, which consists of proof of facts and circumstances from which the jury may infer other connected facts, reasonably following from the proven facts and circumstances. (*Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 456 N.E.2d 192.) Evidence that Coari started the fire was provided by the testimony of Bambenek. He testified that the origin of the fire was on the third floor. He based his opinion on information in depositions, fire reports and the pictures. Mr. Brooke testified in deposition that he saw fire on the third floor. Mrs. Brooke additionally testified that earlier on that day she saw Coari with a drop light and was not sure whether he took it with him when he left the home. Mrs. Brooke and Coari himself testified that there was no one else in the attic with Coari on the day of the fire.

The facts and circumstances in the instant case provided a reasonable basis for the jury to conclude that defendant was responsible for the fire. Defendant's agent was the only person in the attic on the day of the incident; Mr. Brooke testified that to his knowledge none of the electrical hall lights on the third floor were malfunctioning and that there were no lights in the attic. In order to see inside the attic it was necessary to use artificial lighting. Although there was contradictory testimony as to the origin of the fire, plaintiffs' expert testified that the origin of the fire was on the third floor. The credibility of expert testimony is a question of fact for the trier of fact. (*Golden v. Big Bear Foods, Inc.* (1968), 102 Ill. 2d 237, 243 N.E.2d 730.) We find that the circumstantial evidence proved that defendant had exclusive possession and control of the premises and over the instrumentality that caused the fire. Similarly, there was sufficient probative evidence to support the submission of the case to the jury. Therefore, the

trial court did not err in denying defendant's motion for directed verdict on the issue of *res ipsa loquitur*.

■ Defendant argues that the court's failure to grant it summary judgment prior to trial and a directed verdict after trial on plaintiffs' *res ipsa loquitur* count allowed the jury the opportunity to impermissibly infer negligence from the facts and circumstances of the case. Specifically, it maintains that plaintiffs had not met the elements of the doctrine. Defendant argues that this inference of negligence prejudiced it on both counts of plaintiffs' complaint. Defendant thus argues that it is entitled to judgment notwithstanding the verdict. In viewing the evidence in the light most favorable to plaintiffs, we cannot say that the evidence so overwhelmingly favors defendant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Defendant further argues that the trial court erred in denying its motion to dismiss plaintiffs' amended complaint. Defendant asserts that plaintiffs' insurer was the actual party in interest as insurer of the claim, and that plaintiffs had no interest to be adjudicated. Defendant cites to *Blatz v. City of Rock Falls* (1982), 105 Ill. App. 3d 732, 434 N.E.2d 807, for the proposition that when an insured subrogates all his rights and interest to his insurer, he retains no interest in the subrogated claim. Defendant asserts that only the insurer here was entitled to bring the suit for damages. Defendant maintains that by executing the subrogation receipt, plaintiffs relinquished any rights and interest in the lawsuit to Home Insurance Company. *Shaw v. Close* (1968), 92 Ill. App. 2d 1, 235 N.E.2d 830.

Plaintiffs counter by arguing that a subrogation action may be brought in the name of the insured if the insured retains a pecuniary interest, even for only a nominal sum over and above the subrogation claim. (*Scheibel v. Groeteka* (1989), 183 Ill. App. 3d 120, 538 N.E.2d 1236.) They maintain that their actual loss was in excess of the $1,275,000 which they received from the insurer and that they were also charged a $5,000 deductible.

■ Subrogation of a claim does not by itself exclude the party who has the claim from bringing a suit if the insured retains some interest. (*Scheibel*, 183 Ill. App. 3d at 145.) The subrogation receipt that plaintiffs signed here states that they subrogated all rights, claims, and interest that they had to the insurer for the purpose of suing, settling or compromising the claim. However, plaintiffs also gave a sworn statement and testified in deposition and in response to interrogatories that their loss was $1,430,000. We find that these facts demonstrate that plaintiffs retained a pecuniary interest in excess of

the subrogation claim. (*Shaw v. Close* (1968), 92 Ill. App. 2d 1, 235 N.E.2d 830.) Therefore, the court did not err in denying defendant's motion to dismiss plaintiffs' amended complaint.

Defendant next argues that it is entitled to a new trial. It first contends that the verdict was against the manifest weight of the evidence. However, where there is a conflict in the testimony, a reviewing court may not substitute its judgment for that of the jury in passing on the weight of the evidence and on the credibility of the witnesses. (*First National Bank v. Chrysler Realty Corp.* (1988), 168 Ill. App. 3d 784, 522 N.E.2d 1298.) A reviewing court may not set aside a verdict merely because the jury could have determined the credibility of the witnesses differently or drawn different inferences of fact. Where credible evidence supports the verdict, the reviewing court may not say that the conclusions other than the ones drawn by the jury are more reasonable. "Manifest weight" is that weight which is clearly evident, plain and indisputable. *Didier v. Jones* (1978), 61 Ill. App. 3d 22, 27, 377 N.E.2d 572.

■ In this case, we again acknowledge that there was certainly conflicting testimony as to the origin and location of the fire, in addition to the instrumentality that caused the fire. However, reviewing courts do not consider verdicts and judgments to be against the manifest weight of the evidence unless a conclusion opposite to that reached by the jury is clearly evident or the jury's verdict for plaintiff was palpably erroneous. (*International Meat Co. v. Bockos* (1987), 157 Ill. App. 3d 810, 510 N.E.2d 1013.) The record shows that both sides presented conflicting evidence on all issues raised by plaintiffs' complaint and by defendant's affirmative defenses.

After reviewing the record, we cannot say that a verdict for defendant is clearly evident or that the verdict for plaintiffs was palpably erroneous.

Defendant next argues that the trial court erred by admitting Geisler's testimony into evidence. Specifically, defendant asserts that Geisler was not disclosed as a witness pursuant to its discovery request served upon plaintiffs, and that Geisler's testimony was improperly admitted as impeachment where plaintiffs failed to meet the three foundational requirements necessary for the statement to be introduced as an admission by an agent or employee. (*Waechter v. Carson Pirie Scott & Co.* (1988), 170 Ill. App. 3d 370, 523 N.E.2d 1348.) Defendant maintains that the exception applies only to statements made by a party opponent against his or her own interest, and that Coari's alleged statement as testified to by Geisler could not be admitted under the admissions exception. Defendant contends that although

Coari was an employee of defendant, the statement was not admissible as that made by an agent of defendant because the statement occurred after the fire and cannot be considered as part of the *res gestae*. (*Fortney v. Hotel Rancroft, Inc.* (1955), 5 Ill. App. 2d 327, 125 N.E.2d 544.) Defendant further argues that before a statement by an agent can be admitted against a principal, three foundational requirements must be met: (1) the statement must be made by an agent or an employee; (2) the statement was made or done in and about a matter over which the agent/employer had actual or apparent authority; and (3) that the person spoke or acted under or by virtue of his authority as such agent or employee. (*Waechter v. Carson Pirie Scott & Co.* (1988), 170 Ill. App. 3d 370, 523 N.E.2d 1348.) Defendant maintains that the failure to disclose Geisler was plaintiffs' intentional strategy and that this action prejudiced its case. Defendant asserts that the trial court should have sanctioned plaintiffs in this case. Defendant asserts that because of plaintiffs' deliberate failure to disclose Geisler as a witness, the trial court should have sanctioned plaintiffs in this case.

Plaintiffs contend that the jury's verdict was supported by the evidence. They assert that the proper foundation was laid and that the statement made was impeaching in that it was directly contradictory to Coari's in-court testimony that he did not tell Geisler that he started the fire. Plaintiffs assert that the court instructed the jury that the statement was received for a limited purpose, and that the jury is presumed to have followed the court's instructions. (*Storm v. Brown* (1973), 15 Ill. App. 3d 29, 303 N.E.2d 42.) Plaintiffs further maintain that the decision to impose sanctions for the failure of a party to list a witness in answer to interrogatories rests within the discretion of the trial court. (*Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 216 N.E.2d 14.) They assert that their failure to include Geisler's name among the witnesses disclosed in their answer to interrogatories was an inadvertence and that upon their discovery of this fact they timely disclosed the information to defendant.

Before a prior inconsistent statement of a witness is allowed into evidence for impeachment purposes, a proper foundation must be laid. (*People v. King* (1987), 157 Ill. App. 3d 76, 511 N.E.2d 685.) The impeachment of a witness with a prior inconsistent statement must be preceded by directing the attention of the witness to the time, place, circumstances and substance of the inconsistent statement. (*People v. Cowper* (1986), 145 Ill. App. 3d 1074, 469 N.E.2d 729.) Here, the record does not indicate that plaintiffs elicited an in-court statement from Coari that he did not start the fire. The record does indicate

that on direct examination Coari was asked the following questions by defense counsel:

"Q. [Defense counsel]: Within three days or a week after the fire, were you at Mr. Geisler's home?

A. [Coari]: I don't recall if it was a few days, weeks. I do— like I said, I have seen him. I don't know in what period of time.

Q. All right. After the fire, at any time did you tell John Geisler that you caused this fire?

A. No.

Q. Were you ever at John Geisler's home or any other location and did you tell him that you lowered your drop light and that light broke and the fire started?

A. No, I didn't."

On direct examination of Geisler the following colloquy occurred:

"Q. I want to direct your attention approximately to October 3, 1981, did you happen to see Richard Coari?

A. Yes.

Q. What did he say?

* * *

A. He explained to me that he was working in a house running-installing, I'm not sure. Running a cable system or a speaker system in the house and he was working upstairs and he dropped-knocked a hole in the wall to pull some wires up and he lowered a light down through a hole in the wall to see what he was doing, and that while he was lowering this light the bulb broke and started a little fire within the walls."

In plaintiffs' response to defendant's motion to dismiss filed February 21, 1990, plaintiffs specifically conceded that they had omitted Geisler's name in early discovery answers, but stated that this omission was inadvertent, not deliberate. Plaintiffs stated that they reviewed their August 4, 1989, answers to defendant's interrogatories and discovered this oversight. Upon learning of the oversight they immediately filed supplemental answers to defendant's interrogatories and listed John and Veronica Geisler as witnesses. The letter of September 25, 1989, sent by plaintiffs to defendant provided additional support that they acted promptly to notify defendant once the oversight was discovered. In that letter plaintiffs stated: "[in] the spirit of cooperation" they were seasonably supplementing responses to defendant's written production request by providing the statements of John and Veronica Geisler, although there had not been a request for those statements, or a duty to seasonably supplement the response.

■ Plaintiffs maintain that defendant delayed in deposing Geisler until December 16, 1989, and that there was sufficient time to prepare for trial where the trial did not begin until March 6, 1990, over six months after defendant received notice of the oversight. The trial court obviously determined that plaintiffs' action was not a wilful violation of the discovery rules. There is no evidence in the record to refute this conclusion. Based upon these facts, defendant had adequate time to depose Geisler, redepose Bambenek, if necessary, and to consult with its own expert.

Here, Geisler was present in court for purposes of cross-examination. Geisler testified that Coari told him that he started the fire by dropping the drop light. This was in direct contradiction to Coari's incourt testimony. During questioning of Coari, plaintiffs laid the proper foundation by directing Coari's attention to October 3, 1981, and asking whether he saw Geisler on that date and whether he told Geisler that he started the fire. Coari replied that he did not. Geisler's testimony was directly impeaching of Coari's. (*People v. Rios* (1986), 145 Ill. App. 3d 571, 495 N.E.2d 1103.) Thus, we find that the trial court did not err in admitting Geisler's testimony into evidence. This is particularly true where the court instructed the jury that the testimony "you are about to hear should be considered by you as impeachment testimony and it is not offered as substantive evidence."

Moreover, the issue of sanctions is within the discretion of the trial court. (*Hengels v. Gilski* (1984), 127 Ill. App. 3d 894, 469 N.E.2d 708.) In making a determination of whether and which sanctions should be imposed, the court must look to several factors: (1) surprise of the testimony; (2) the prejudicial effect of the testimony; (3) the diligence of the opposing party in seeking discovery; (4) timely objection to the testimony; and (5) good faith of the party calling the witness. (*Blakely v. Johnson* (1976), 37 Ill. App. 3d 112, 345 N.E.2d 814.) Defendant cites to *Palmer v. Minor* (1991), 211 Ill. App. 3d 1083, 570 N.E.2d 774, where the court imposed sanctions for failure to disclose a witness. In *Palmer*, plaintiff had a close relationship with the undisclosed witness; the witness was the mother of his child; plaintiff and the witness lived together; she was present at the scene of the accident and plaintiff knew she was a witness; and plaintiff had discussed her role as a witness, but repeatedly withheld her identity. *Palmer* is distinguishable from the instant case. Here, there was no close relationship between plaintiffs and Geisler; plaintiffs never discussed with Geisler his role as a witness; there were not repeated attempts by defendant to learn of Geisler's identity; and plaintiffs did not have a familial or personal relationship with Geisler. We find that under these

circumstances the trial court did not abuse its discretion by failing to impose sanctions upon plaintiffs.

Defendant also argues that the trial court erred in admitting the testimony of plaintiffs' expert witness, Robert Bambenek, who admitted during trial that the home was not in substantially the same condition at the time he examined it as it was after the fire. Therefore, it contends that expert testimony surrounding the conditions discovered five years after the fire was inadmissible. (*Escher v. Norfolk & Western Ry. Co.* (1980), 82 Ill. 2d 110, 119, 411 N.E.2d 864.) Defendant further contends that Bambenek's reference to any artifacts that he found on the second floor, including the bulb guard, light bulbs, cigarette butts and cigarette pack, should have been barred.

Plaintiffs contend that Bambenek testified that the premises were sufficiently unchanged at the time of his inspection to enable him to determine the point of origin of the fire, the area of heaviest damage, the direction of the fire, the identity of the combustibles or fuel available and the source of ignition. They assert that Bambenek was qualified as a cause and origin expert, reviewed the depositions, the fire department reports, technical documents and floor plans regarding the home and fire. Plaintiffs maintain that this evidence was sufficient to support Bambenek's opinions. *Wiedemann v. Industrial Erectors, Inc.* (1985), 137 Ill. App. 3d 47, 483 N.E.2d 990.

■ In reviewing the record we find that Bambenek reviewed the photographs, depositions and fire department reports, technical documents and floor plans in reaching his conclusion. He was qualified as a cause and origin expert and had investigated over 800 fires. Based on these circumstances, we cannot say that the court erred in admitting his testimony. As to Bambenek's testimony regarding the artifacts, defendant failed to make an objection and the issue is therefore waived. *Peterson v. Henning* (1983), 116 Ill. App. 3d 305, 452 N.E.2d 135.

Defendant further maintains that it suffered prejudice by plaintiffs' reference to the deposition testimony of an expert who was not called to testify. Keery Padfield was hired by plaintiffs' insurer to investigate the fire. Padfield gave deposition testimony in which he stated that he prepared an investigative report in 1981 and his opinion at that time was that the cause of the fire was a hot wire that shorted and started the fire. He did not know what caused the conduit to short. Defendant contends that plaintiffs' questioning of Bambenek regarding the report which was not in evidence effectively conveyed the opinion of Padfield without his presence at trial or defense counsel's opportunity to cross-examine Padfield.

During trial the following colloquy occurred:

"Q. [Plaintiffs' counsel]: Counsel also asked you whether you had an opportunity to look at something generated by an investigator named Padfield. Have you had an opportunity to read his deposition transcript taken after your deposition?

A. [Bambenek]: Yes.

Q. Did it support or alter your opinion in any way?

A. It essentially supports it in part.

Q. In what way?

A. That Mr. Coari caused the fire.

Q. From Mr. Padfield, is that correct?

A. Yes, sir."

We first note that defendant failed to raise an objection to plaintiffs' questioning of Bambenek regarding the opinion held by Padfield in his deposition. Therefore, the issue is waived. (*F D L Foods, Inc. v. Kokesch Trucking, Inc.* (1992), 233 Ill. App. 3d 245, 599 N.E.2d 20.) Further, during direct examination of Lieutenant Beatty, defense counsel asked Beatty whether Mr. Padfield agreed with his conclusions as to the cause of the fire. Beatty responded affirmatively. Thus, on cross-examination of Beatty it was proper for plaintiffs to question Beatty on that issue. It is established that a party may introduce evidence, ordinarily improper, where the opponent has opened up the issue and the party seeking to introduce the evidence would be prejudiced unless allowed to introduce it. (*Voga v. Nelson* (1983), 115 Ill. App. 3d 679, 450 N.E.2d 1364.) Here, during a sidebar the court stated:

"The witness said Padfield agreed with his opinion and his finding. I think you have a right to cross-examine him on that ***. Certainly, the door has been opened."

Additionally, after defense counsel brought to the court's attention that his questioning of Beatty regarding Padfield's opinion was limited to the time when Beatty and Padfield were physically on plaintiffs' premises investigating the fire, the court instructed plaintiffs to ask only what Beatty knew about Padfield's opinions at that time. When plaintiffs asked that question Beatty stated that he was only aware of the opinion Padfield held on the day of the investigation and not any subsequent opinions. Moreover, the court instructed the jury that the testimony was admitted for a limited purpose. Thus, the jury is assumed to have followed the court's instructions. *Storm v. Brown* (1973), 15 Ill. App. 3d 29, 303 N.E.2d 42.

As to plaintiffs' questioning of Schumann regarding Schumann's review of Padfield's transcript, the court instructed the parties that it

would strike the testimony if Schumann had not relied upon it in formulating his opinion. Outside the presence of the jury, Schumann was asked by counsel if he relied upon any opinion generated by Padfield in formulating his opinion. Schumann stated that he did not rely on Padfield's opinion and the court struck the questions. Under these circumstances, we cannot say that defendant was prejudiced by any reference to the deposition testimony of Padfield.

Defendant next argues that the trial court improperly excluded the fire report prepared by the Lake Forest fire department. Defendant contends that the exclusion of the report, including the "dispatch card," materially inhibited its ability to rebut plaintiffs' impeachment of defendant's witnesses. Defendant maintains that under the business record exception to the hearsay rule, the information was admissible. Plaintiffs maintain that the report was properly excluded where it contained opinions and findings of Padfield, where the author of the report was not qualified to testify as an expert and where the report contained no other admissible relevant facts than those already in evidence. Plaintiffs maintain that unless the author of the fire report is qualified at trial as an expert, the report is not admissible as an exception to the hearsay rule. *Bloomgren v. Fire Insurance Exchange* (1987), 162 Ill. App. 3d 594, 517 N.E.2d 290.

■ Illinois law clearly holds that official records kept by public officials are generally admissible as an exception to the hearsay rule, if the records are required by statute or authorized to be maintained by the nature of the office. (*Oak Lawn Trust & Savings Bank v. City of Palos Heights* (1983), 115 Ill. App. 3d 887, 450 N.E.2d 788.) Where a fire incident report clearly contains an opinion as to the cause of the fire, it is not admissible under the public records exception to the hearsay rule unless the author of the report is qualified as an expert. (*Bloomgren v. Fire Insurance Exchange* (1987), 162 Ill. App. 3d 594, 517 N.E.2d 290.) Here, the report contained information to which the author was unable to testify as an expert. Therefore, it was not admissible under the exception to the hearsay rule. *Bloomgren*, 162 Ill. App. 3d at 599.

Defendant also maintains that the court erred by barring evidence related to Terry Strong's investigation of the fire. Defendant asserts that Strong admitted he wrote, signed and sent the investigation report. Defendant contends that under the past recollection recorded or, alternatively, as a letter, Strong's report should have been admitted into evidence. Plaintiffs contend that Strong's report was properly excluded as it did not qualify as a past recollection recorded. Plaintiffs cite to *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466

N.E.2d 958, for the proposition that a witness' out-of-court report is hearsay and qualifies under the past recollection recorded exception only if the witness has firsthand knowledge of the event recorded and the witness testifies that he lacks a present recollection of the event. Plaintiffs assert that Strong specifically stated that he had a recollection of having a conversation with Geisler.

Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless it falls within one of the recognized exceptions to the rule. (*People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895.) We first note that the evidence which defendant sought to have admitted constituted double hearsay since Geisler's out-of-court statement is contained in the investigation report prepared by Strong. In such a case, both levels must fall within an exception to the hearsay rule in order to be used as substantive evidence. (See *People v. Chambers* (1989), 179 Ill. App. 3d 565, 534 N.E.2d 554; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §805 (5th ed. 1990).) We further note that defendant did not argue that Geisler's statement to Strong was admissible as a state of mind exception to the hearsay rule. Generally, the proponent of excluded testimony is limited on appeal to the grounds for admissibility raised in the circuit court. *Waechter v. Carson Pirie Scott & Co.* (1988), 170 Ill. App. 3d 370, 523 N.E.2d 1348.

As to the investigation report, such documents usually are not admissible as evidence. An investigation report may be admitted as past recollection recorded if the proper foundation is laid. (*People v. Garrett* (1991), 216 Ill. App. 3d 348, 576 N.E.2d 331.) In order to be admissible, the proponent must establish that the witness has no independent recollection of the event or occurrence recorded, that the report fails to refresh the witness' recollection, that the facts in the report have been recorded at the time of the occurrence or soon thereafter, and that the report is both truthful and accurate. *Loughnane v. City of Chicago* (1989), 188 Ill. App. 3d 1078, 545 N.E.2d 150.

■■ Here, the record indicates that Strong did not lack an independent recollection of the conversation he had with Geisler. When questioned by defense counsel regarding this issue, the following colloquy occurred:

"Q. [Defense counsel]: All right, sir. As you sit here today do you have a full and accurate recollection of having a conversation with John Geisler back in 1983?

A. [Strong]: I have a recollection of having the conversation with him.

Q. All right. Do you have a full and complete recollection of what transpired during that conversation.

A. I may not remember every detail."

After defense counsel's second attempt to have the report entered into evidence, the court explained that the witness was available to testify and that the statement could not be admitted as a prior consistent statement. Under these circumstances the report did not qualify as an exception to the hearsay rule.

Defendant contends that the court erred by admitting into evidence photographs depicting the residence because plaintiffs failed to lay the proper foundation. Specifically, defendant maintains that plaintiffs did not testify to the hour and date the photographs were taken. Plaintiffs concede that there was no testimony as to the exact hour when the photographs were taken, but maintain that there was sufficient evidence presented that the photographs "truly and accurately" represented the scenes depicted.

The general rule is that a photograph is admissible if it has a reasonable tendency to prove a material fact in issue. (*Smith v. Baker's Feed & Grain, Inc.* (1991), 213 Ill. App. 3d 950, 572 N.E.2d 430.) Admission of photographs rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. (*Reid v. Sledge* (1992), 224 Ill. App. 3d 817, 587 N.E.2d 1156.) Admission requires some foundation to establish that the object depicted was in substantially the same condition as it was at the time of the accident (*Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 365), and that the photograph is a true and correct representation of what it purports to portray. *Pace v. McClow* (1983), 119 Ill. App. 3d 419, 458 N.E.2d 4.

At trial, the photographs at issue were described in detail by Mr. Brooke. He gave descriptions of not only the areas depicted in the photographs, but he also gave an explanation of when the photographs were taken relative to the fire. He stated that exhibit 41 was a photograph which depicted area 205 where a big chandelier hung and had been taken very shortly after the fire. He described exhibit 45 as a photograph of the second-floor hall taken the day after the fire. We are satisfied that plaintiffs provided sufficient testimony regarding the areas depicted in the photographs and that the objects depicted in the photographs were in substantially the same condition as they were at the time of the fire. The purpose of the photographs was to present evidence to the jury demonstrating the extent of damage in certain areas of the home and the lack of fire damage in other areas of the home. We find that these photographs did not mislead the

jury. Therefore, the trial court did not abuse its discretion. *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 378 N.E.2d 502.

Defendant next argues that the court erred in excluding the videotaped evidence deposition of Gurnee deputy police chief, Henry Schwarz. Defendant asserts that the deposition contained evidence of Geisler's veracity and that the court's exclusion of this evidence was prejudicial error.

Any witness may be impeached by evidence showing generally a poor reputation for truth and veracity. (*People v. Rosario* (1989), 180 Ill. App. 3d 977, 536 N.E.2d 756.) The proper procedure to introduce evidence of truthfulness is to ask the witness whether he knows the general reputation of the defendant's truthfulness in the neighborhood in which the defendant lives or at his workplace. (*People v. Williams* (1990), 139 Ill. 2d 1, 563 N.E.2d 431.) Evidence of a witness' general reputation for truth and veracity must not be based upon the personal opinion of a character witness or specific instances of the witness' alleged acts. *People v. Fuller* (1983), 117 Ill. App. 3d 1026, 545 N.E.2d 334.

In this case, the deposition testimony of Deputy Chief Henry Schwarz revealed that Schwarz had investigated a complaint filed against Geisler alleging that Geisler had stolen and forged a check. As part of his investigation Schwarz testified that he talked only with the complaining witness regarding Geisler's reputation. When Schwarz was asked whether he talked with persons in the community regarding Geisler's reputation he testified that he had not done so.

■■ Because any reputation testimony that Schwarz gave during his deposition was not based upon the general opinion of Geisler's reputation for truthfulness as it was known in Geisler's neighborhood, the proper foundation for admitting that testimony was not laid. Therefore, the trial court did not err in failing to admit Schwarz's videotaped deposition.

Defendant maintains that the court erred in allowing plaintiffs' attorney to make misstatements of law and fact during closing argument. Specifically, defendant contends that plaintiffs' counsel, over its objection, argued during closing that the jury could infer that Coari's cigarette smoking caused the fire. Defendant argues that plaintiffs' assertion was improper where there was no evidence in the record to support the allegation that smoking caused the fire. Defendant asserts that argument based on facts not in the record is inappropriate and prejudicial. (*Schaffner v. Chicago & North Western Transportation Co.* (1987), 161 Ill. App. 3d 742, 515 N.E.2d 298.) Defendant contends

that by allowing plaintiffs to make that argument it was prejudiced on both the *res ipsa loquitur* and negligence counts.

■■■ The scope of closing argument is within the sound discretion of the trial court, and argument must be prejudicial for a reviewing court to reverse on those grounds. (*Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 584 N.E.2d 130.) Further, attorneys are allowed broad latitude in drawing reasonable inferences and conclusions from the evidence. (*Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1049, 460 N.E.2d 464.) Here, although plaintiffs' counsel made reference to Coari's smoking without sufficient evidence in the record to support such an inference, we find that this error was harmless. The court instructed the jury that it was to consider only evidence in reaching its verdict and that arguments of counsel were not evidence. The jury is presumed to have followed the court's instructions. *Richardson v. Marsh* (1987), 481 U.S. 200, 95 L. Ed. 2d 176, 107 S. Ct. 1702.

Defendant also argues that the trial court erred by allowing plaintiffs to argue that defendant failed to produce witness Steven Layng, pursuant to Illinois Pattern Jury Instructions (IPI), Civil, No. 5.01 (2d ed. 1971). Specifically, defendant contends that there was no evidence in the record that Padfield was within its power to produce and that Steven Layng was never disclosed by it as an expert retained to testify under Supreme Court Rule 220. (134 Ill. 2d R. 220.) Defendant maintains that Layng's sole role was as an occurrence witness.

Plaintiffs argue that defendant used the instruction to imply that had Padfield been called to testify he would have supported the defendant's case. Plaintiff maintains that defendant tendered IPI Civil 2d No. 5.01 and that there was no evidence introduced at trial to provide the foundation necessary for the instruction to be given. Plaintiffs assert that there is no evidence that they controlled and were able to produce Padfield as a witness. They further maintain that they did not argue that the jury could infer that Layng's testimony would have supported their case.

Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971) is the missing-witness instruction, which permits the jury to infer that the testimony of a witness which a party failed to call would be adverse to that party when the missing witness was under the control of the party, not equally available to the opposing party, and no reasonable excuse for the failure to call the witness has been shown. (*Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 484 N.E.2d 1237.) The giving of the instruction is within the sound discretion of the trial court, and a reviewing court

should reverse only where a clear abuse of discretion appears of record. (*Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 342 N.E.2d 144.) In deciding whether to give the instruction the court must first make a determination if whether, in all likelihood, the party would have produced that witness unless the testimony was in fact unfavorable. *Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 460 N.E.2d 464.

Here, we first note that it was defendant who tendered the missing witness instruction to the court. Defendant then explained to the court that plaintiffs had retained Padfield as an expert witness in the trial, that Padfield was disclosed and deposed, but not called as an expert at the time of trial. As part of his investigation conducted for plaintiffs' insurer, Padfield was assisted by Steven Layng, a laboratory technician. Padfield gave Layng samples of the burnt electrical wire from the Brookes' home, which Layng analyzed for clues as to the cause and origin of the fire. Defendant by its own admission in the record stated that it disclosed Layng to plaintiffs and advised them that Layng would be called to "enter expert testimony at trial," although he was never retained as an expert witness. There is also evidence that Layng was listed as an expert in plaintiffs' interrogatories served on defendant. The court instructed defendant and plaintiffs that if the missing witness instruction was given it "would apply wherever the facts are applicable." In deciding to give the instruction, the court stated:

> "I'm not going into who hired who and what and when and so forth, I'm not going to have a theory on that at this particular time. You disclosed him, you disclosed him.
>
> * * *
>
> What evidence is there before the jury that the witness is not equally available—It's not for me to decide * * * given [that] both of you can use it."

The record reveals that after defense counsel's request that instruction IPI Civil 2d No. 5.01 be given as to plaintiffs' expert Padfield, counsel for plaintiffs advised the court that if the instruction was given against plaintiffs that it should also be given against defendant as to Steven Layng. Counsel for plaintiffs asserted that defendant had named Steven Layng as their expert, but did not produce him. The court at that point advised the parties that if the instruction was given it would not specifically name any one, and would apply to wherever the facts are applicable. The court then questioned defense counsel as to why Padfield was not available to him. After citing several cases for the proposition that an expert

who is hired by a party is under that party's control and not equally available to both parties, defense counsel asserted that Padfield was under plaintiffs' control and satisfied all four criteria necessary for the IPI Civil 2d No. 5.01 instruction to be given. Plaintiffs' counsel countered, arguing that one criterion had not been satisfied: the requirement that a reasonably prudent person would have offered the evidence if he believed the testimony would be favorable was not satisfied. The court advised the parties that it was not ruling as to whether or not the criteria had been met, and that it was a jury determination whether a reasonably prudent person would have produced the witness.

In determining that the instruction would be given, the court advised the parties that they would have to convince the jury of each of the four criteria. The court explained that it was a question for the jury to determine as to whether Padfield was not equally available to the parties. We disagree. In making the determination to give the missing witness instruction the trial court is charged with determining whether in all likelihood the party would have produced that witness unless the testimony was in fact unfavorable. *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 776, 484 N.E.2d 773.

■■■ In this case, it was defendant who tendered the missing witness instruction as to plaintiffs' expert Padfield. Plaintiffs countered by arguing that if the instruction was given as to Padfield that it should also be given as to Steven Layng. Padfield was disclosed as an expert by plaintiffs but not produced at trial; Layng was disclosed as an expert by defendant and, likewise, not produced at trial. The court advised both defendant and plaintiffs that if the instruction was given it would apply wherever the facts were applicable. Without determining whether Padfield was not equally available to both parties, the court gave the instruction and stated that the jury was responsible for making that determination. While the court misstated the law as it related to the determination of whether a party is equally available, and consequently erred by tendering the instruction, we find that the error was harmless. (*J.L. Simmons Co. v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 483 N.E.2d 273.) It was defendant who tendered the missing witness instruction, and a party cannot claim error when it induced the trial court's mistake. (*J.L. Simmons Co.*, 108 Ill. 2d at 116.) Further, neither party produced his expert at trial, although the experts were disclosed. Moreover, pursuant to the court's admonish-

ment, once the instruction was given it applied equally to all parties.

Defendant finally argues that the trial court abused its discretion in not allowing its expert witness, Howard Prosser, to use certain evidence during trial. Defendant called Prosser to explain to the jury how electrical arcing occurs in wiring. He identified and described the type of wire used in homes built in the 1920's and the insulation that covered the wiring. Prosser sought to use samples of 1920 vintage wire and modern wire and photographs of arced electrical wire from a house fire to explain how electrical arcing occurs in wiring, how arcing can cause fires and the signs and symptoms of arcing. None of the wiring was taken from the Brookes' home, nor were the photographs of the Brookes' home.

██ It is within the trial court's discretion to determine whether a party may present demonstrative evidence to clarify an expert's testimony. (*Continental Concrete Pipe Corp. v. Century Road Builders, Inc.* (1990), 195 Ill. App. 3d 1, 552 N.E.2d 1032.) Here, the evidence which Prosser sought to use during trial was not taken from the Brookes' home. The court pointed out:

> "If the jury sees this they may start assuming that because of the way it looks it very well may have been the cause of the fire. *** Letting them see this won't give them any better understanding of it other than what he says, and when they see this they can draw all kinds of conclusions."

Under these circumstances, we cannot say that the trial court abused its discretion.

For the above reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.